IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| QUINCY DESHAN BUTLER | § | |
| VS. | § | CIVIL ACTION NO. 9:16-CV-210 |
| DIRECTOR, TDCJ-CID | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Petitioner, Quincy Deshan Butler, an inmate confined at the Eastham Unit with the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

<u>Procedural & Factual Background</u>

Petitioner was indicted on August 18, 2011, in Brazos County for two counts of aggravated assault with a deadly weapon. One of the counts involved family violence. The indictments were related to events that occurred on May 28, 2011. Petitioner also had charges pending in Waller County for possession of a controlled substance, possession of a firearm by a felon, and evading arrest that stemmed from the events on May 28, 2011.

Petitioner's pre-trial counsel indicated to the State that petitioner wished to testify at the August 2011 grand jury proceedings involving the charges for aggravated assault. The State sent petitioner an invitation through his attorney to appear at the grand jury proceedings. The invitation letter contained "target warnings" taken from TEX. CODE. CRIM. PR. ANN. art. 20.17 (West 2005). Petitioner voluntarily appeared before the grand jury, and he was informed that the grand jury was investigating the two charges of aggravated assault. Petitioner was again given the target warnings orally and in writing, and he waived his rights provided in the target warnings and testified before the grand jury about the events that occurred on May 28, 2011.

On January 16, 2012, petitioner was indicted by a grand jury in Brazos County for deadly conduct discharge of a firearm and unlawful possession of a firearm by a felon. *State of Texas v.*

*Butler*, No. 12-00472-CRF-272, Clerk's Record, Indictment, pg. 9 (docket entry no. 41-1). The State elected to try the cases from the January 2012 indictment first. For the purpose of charging petitioner as a habitual offender, the indictment also alleged petitioner's two prior convictions for possessing a controlled substance. *Id*. Petitioner was ultimately tried for only the deadly conduct charge and a jury found him guilty on October 31, 2013. Clerk's Record, Judgment of Conviction by Jury, pg. 171 (docket entry no. 41-3). On the following day, the jury sentenced petitioner to a 62 year term of imprisonment. *Id*.

Petitioner filed a Notice of Appeal. On January 8, 2015, the Tenth Court of Appeals affirmed the conviction. Memorandum Opinion, *Butler v. State*, No. 10-13-00430-CR, pgs. 1-28 (docket entry no. 41-7). The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Butler v. State*, No. PD-0129-15 (pet. ref's Apr. 1, 2015). On October 5, 2015, the United States Supreme Court denied petitioner's petition for certiorari. *Butler v. Texas*, No. 15-5381, 136 S.Ct. 235 (2015).

Petitioner filed a state application for writ of habeas corpus on September 28, 2016 (docket entry no. 44-12). The writ was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court without a hearing on March 8, 2017. Action Taken, *In re Butler*, No. WR-70,583-06 (docket entry no. 44-6).

Petitioner filed his federal petition for writ of habeas corpus on December 21, 2016 (docket entry no. 1). After clarifying petitioner's claims, respondent was ordered to Show Cause on April 5, 2017 (docket entry no. 20). The Response was filed on July 21, 2017 (docket entry no. 40). Petitioner amended his federal application for writ of habeas corpus and filed a second state application for writ of habeas corpus on February 27, 2018, while this federal action was pending. *See* State Writ (docket entry no. 112-1). Respondent was ordered to show cause as to petitioner's amended claims on May 3, 2019. Respondent argues the claims are exhausted, procedurally barred or lack merit. This Memorandum Opinion and Order considers the Responses and petitioner's Reply. *See* Director Response (docket entry nos. 40 & 111); *see also* Petitioner's

2

Reply (docket entry nos. 48, 77, 91 & 118).

<u>Relevant Facts</u>

The Tenth Court of Appeals reviewed petitioner's appeal of his state application for habeas relief for his companion charge of possessing a firearm[1] which arose out of the same incident as the instant offense. The Tenth Court of Appeals summarized the relevant facts as follows:

> [On May 28, 2011,] [Butler] allegedly shot through a closed door and hit his girlfriend, Pinkie Hardy, while at Hardy's residence in Bryan, Texas. According to the probable-cause statement made by Travis Hines to Sergeant Blake Bell, after the shooting, [Butler] fled the scene. When he left the scene, [Butler] was seen with a pistol in his possession. [Butler] fled in a vehicle to Waller County, Texas. After evading Waller County Sheriff's deputies, [Butler] crashed his vehicle on Highway 290 in Waller County. A semi-automatic pistol and cocaine were discovered in [Butler's] vehicle. Additionally, a large amount of United States currency was found on [Butler's] person. [Butler] was subsequently arrested.

*Ex parte Butler*, No. 10-13-00362-CR, 2014 WL 2466564, & 1 (Tex. App. – Waco May 29, 2014).

<u>Points of Error</u>

The Court has taken considerable time to review all the pleadings in this matter, the state court records, and the responses filed by the Respondent and Petitioner in order to compile a list of petitioner's claims.[2] Giving the most liberal construction to petitioner's claims, the points of error are as follows:

1. Trial counsel failed to object on the grounds that the jury charge constituted 1) a constructive amendment of indictment, 2) a material and fatal variance, 3) reduced the State's burden of proof, 4) right to unanimous verdict, 5)violated petitioner's rights under the United States Constitution to majority verdict, 6) denied fair notice, and 7) violated petitioner's right against double jeopardy.[3] (first state writ)

2. The State subjected petitioner to double jeopardy by trying him for a greater and lesser-included offense at the same time. Trial counsel failed to object. Petitioner suffered egregious harm based on the fact that the jury charge was erroneous in allowing some of the juror's to

---

[1]Petitioner does not challenge his conviction for unlawfully possessing a firearm.

[2]The responses filed by the Government were wholly inadequate.

[3]Amended Petition, Claim 1 (docket entry no. 9); 3rd Amended Petition, Claim 1 (docket entry no. 71); same as original Claim 1 but added 5-7; 5-7 in Claim 2 of the 4th Amended Complaint (docket entry no. 95).

convict for deadly conduct. This violated petitioner's state and federal constitutional rights to jury unanimity, majority verdict, and against double jeopardy.[4] (first state writ)

3.   Trial counsel failed to re-object to the murder statement made by the State after first objection had been sustained, despite the trial admonishment to the first objection, they reiterated the statement that appellant "came to the community sells poison then commit's [sic] murder while he's here." Trial counsel failed to re-object and move for a mistrial.[5] (first state writ)

4.   Appellate counsel raised the court denial of three separate motions for mistrial. However, appellate counsel failed to argue the cumulative effect of the three instances of prosecutorial misconduct denied petitioner a fair trial.[6] (first state writ)

5.   Trial counsel moved to quash the indictment on grounds that the deadly conduct allegation contained in the indictment failed to state all the elements of the offense of deadly conduct by failing to state a culpable mental state. However, trial counsel's motion was incorrectly stated, because the indictment instead alleged the wrong culpable mental state.[7] (first state writ)

6.   Appellate counsel failed to raise the double jeopardy claim: On September 18, 2013 the second mistrial was caused by the State questioning its own witness with questions the prosecutor knew, or should have know, would elicit harmful and prejudicial responses. The prosecutor forced the mistrial by "goading" the defense to move for a mistrial. Trial counsel objected to proceeding to the October 29, 2013 trial on the grounds of double jeopardy. Appellant counsel failed to raise this reversible error.[8] (first state writ)

7.   Out of Time Appeal: Appellate counsel failed to comport her argument to the trial lawyers objection and waived petitioner's right

---

[4]Amended Petition, Claim 2 (docket entry no. 9); same as Claim 2 in 3rd Amended Petition (docket entry no. 71).

[5]Amended Petition, Claim 3 (docket entry no. 9); same as Claim 3 and 16 in 3rd Amended Petition (docket entry no. 71); same as Claim 3 in 4th Amended Petition (docket entry no. 95); added "who commits murder" in Claim 19 in Third Amended Petition (docket entry no. 71).

[6]Amended Petition, Claim 4 (docket entry no. 9); same as Claim 4 in 3rd Amended Petition (docket entry no. 71); same as part 3 of Claim 7 in 4th Amended Petition (docket entry no. 95).

[7]Amended Petition, Claim 5 (docket entry no. 9); same as Claim 5 in 3rd Amended Petition (docket entry no. 71); same as part 1 of Claim 8 in 4th Amended Petition (docket entry no. 95). Petitioner later states he is not seeking an out-of-time appeal.

[8]Amended Petition, Claim 7 (docket entry no. 9); same as Claim 7 in 3rd Amended Petition (docket entry no. 71); same as part 4 in Claim 7 of 4th Amended Petition (docket entry no. 95).

to appeal by failing to comply with the law.[9] (first state writ)

8.  Appellate counsel failed to cite any relevant authority in support of insufficiency of the evidence claim based on the State's failure to elect between alternative manner and means of committing deadly conduct.[10] (first state writ)

9.  Trial counsel failed to call petitioner's Waller County attorney at a pre-trial hearing (Writ of Habeas Corpus on Double Jeopardy Collateral Estoppel) as a witness to testify to the fact that the firearm was dismissed as part of a plea agreement and that it should not be able to be used in any proceedings afterward.[11] (first state writ)

10. Pre-trial counsel (Dennis Richards) gave incorrect sentencing advice before he advised petitioner to attend the grand jury. Counsel failed to investigate the law and facts of the case. If counsel Dennis Richards would not have given petitioner the advise to admit to a crime petitioner would not have been indicted for deadly conduct.[12] (first state writ/amended)

11. Trial counsel failed to request for instruction on the lesser included offense instruction when the criteria was satisfied. Counsel failed to afford petitioner his right to allocution at sentencing.[13] (first state writ/amended)

12. Counsel failed to offer petitioner a plea offer on deadly conduct.[14] (first state writ/amended)

13. Counsel failed to call a material witness that was willing and available to testify (Roy Ellis).[15]

---

[9] Amended Petition, Claim 10 (docket entry no. 9); same as Claim 10 in 3rd Amended Petition (docket entry no. 71); same as part 1 of Claim 7 in 4th Amended Petition (docket entry no. 95).

[10] Amended Petition, Claim 11 (docket entry no. 9); same as Claim 11 in 3rd Amended Petition (docket entry no. 71); same as part 2 of Claim 7 in 4th Amended Petition (docket entry no. 95). .

[11] Amended Petition, Claim 13 (docket entry no. 9); same as Claim 13 in 3rd Amended Petition (docket entry no. 71); same as Claim 5 in 4th Amended Petition (docket entry no. 95).

[12] Amended Petition, Claim 15 (docket entry no. 9); same as Claim 15 in 3rd Amended Petition (docket entry no. 71); Claim 1 in 4th Amended Petition (docket entry no. 95).

[13] Amended Petition, Claim 16 (docket entry no. 9); lesser included instruction same as Claim 19 in 3rd Amended Petition (docket entry no. 71); part of Claim 2 in 4th Amended Complaint (docket entry no. 95).

[14] Amended Petition, Claim 17 (docket entry no. 9). Petitioner states this ground is presented for the first time in his federal petition for writ of habeas corpus as TDCJ impeded with petitioner's legal documents during a cell search and interfered with his filings.

[15] Added in Request to Amend Ground 16 (docket entry no. 51).

14. Trial counsel failed to investigate prior conviction in cause no. 1090275 and validity of the constitutionality of the priors that were used to enhance petitioner's deadly conduct which was a 2 to 10 offense.[16] (second state writ/abuse of the writ)

15. Trial counsel failed to object to the indictment for lack of jurisdiction based on the grounds that petitioner was arrested May 28, 2011 and petitioner was indicted on January 26, 2012 which exceeds 180 days.[17] (second state writ/abuse of the writ)

16. Trial counsel failed to request a directed verdict on the grounds that the State had failed to prove petitioner shot at or in the direction of both Hardy and Roberson. The State admitted during closing arguments that "[w]e don't know what he thought was behind that door and what positioning. But that was not an element we have to prove." There is no way to determine under which theory of deadly conduct each juror chose to convict. The charge was prejudicially erroneous and the trial court would have reversibly erred had trial counsel objected and the court failed to sustain the objection.[18]

17. Ineffective assistance of counsel when counsel was denied the ability to cross examine and impeach State's witness with Brady material.[19]

18. Ineffective assistance of counsel when trial counsel failed to object to the indictment. The State subjected petitioner to double jeopardy and trial counsel failed to object on the grounds of double jeopardy and on the grounds of illegal grand jury impaneled and counsel did not have an opportunity to challenge the array at the time the grand jury was impaneled.[20]

19. Double Jeopardy/Void Conviction: Petitioner was tried on June 5-6, 2012. The State requested and received a mistrial after the Court granted petitioner's motion to suppress. Following reversal on appeal, the State retried the case on September 17-18, 2013 and another mistrial was declared when the State elicited testimony from the complainant concerning petitioner being on parole at the time of the alleged offense.[21] (first state writ) (same as point of error no. 25)

---

[16]Added when amended Claim 16 in 3rd Amended Petition (docket entry no. 71); Third Amended Petition, Claim 18/19 (docket entry no. 71).

[17]Added when amended Claim 16 in 3rd Amended Petition (docket entry no. 71); same as Claim 19 in Third Amended Petition (docket entry no. 71).

[18]Added as part of Claim 5 in Fourth Amended Complaint (docket entry no. 95).

[19]Added as part of Claim 5 in Fourth Amended Complaint (docket entry no. 95).

[20]Added as part 2 of Claim 8 in 4th Amended Petition (docket entry no. 95).

[21]Amended Petition, Claim 6 (docket entry no. 9); same as Claim 6 in 3rd Amended Petition (docket entry no. 71).

20. Denial of a Fair Trial: outside influences upon jurors raise a presumption of prejudice that imposes a heavy burden on the State to overcome by showing that those influences were harmless to the petitioner.

On September 19, 2013, a second mistrial was granted due to the State's witness prejudicial testimony concerning petitioner's prior history. The same information was allowed to be publicized on the front page of the Eagle newspaper published by Dave McDermand. This article revealed petitioner's entire history so that every potential juror was exposed to petitioner's prior history by this publishing. Then, petitioner was tried a month later on October 29, 2013 after petitioner's history was exposed.[22] (first state writ).

21. Judicial Egregious Manifest Error: judge failed to *sua sponte* change venue. (first state writ)

Trial judge failed to change venue after petitioner's prior history was posted in the Eagle newspaper and internet on September 19, 2013 due to the September 17, 2013 mistrial. Petitioner was allowed to be tried again on October 29, 2013 after his prior history was exposed before his final trial began.[23]

22. Challenge to Deadly Weapon Finding/Double Jeopardy/Collateral Estoppel/Illegally Obtained Evidence: petitioner entered a plea agreement in Waller County which consisted of evading arrest/possession of a controlled substance and felon in possession of a firearm which was dismissed as part of the plea agreement. Also, this evidence was obtained after petitioner left the crime scene during an inventory search.[24] (first state writ)

23. Brady Violation/Violation of Due Process/Insufficient Evidence/Illegally Obtained Evidence: trial counsel was not provided a copy of the inventory sheet which was supposed to have a firearm on the inventory sheet. The inventory sheet wasn't provided until trial had begun. The inventory sheet was conducted by Waller County Sheriff's Department. This evidence was withheld.[25] (first state writ)

---

[22]Amended Petition, Claim 8 (docket entry no. 9); same as Claim 8 in 3rd Amended Petition (docket entry no. 71); same as Claim 4 in 4th Amended Petition (docket entry no. 95).

[23]Amended Petition, Claim 9 (docket entry no. 9); same as claim 9 in 3rd Amended Petition (docket entry no. 71); same as part 3 of Claim 6 of 4th Amended Petition (docket entry no. 95). .

[24]Amended Petition, Claim 12 (docket entry no. 9); same as Claim 12 in 3rd Amended Petition (docket entry no. 71); Claim 9 of 4th Amended Petition (docket entry no. 95).

[25]Amended Petition, Claim 14 (docket entry no. 9); same as Claim 14 in 3rd Amended Petition (docket entry no. 71); same as Claim 10 in 4th Amended Petition (docket entry no. 95).

24.    The court unfairly restricted the defenses' cross-examination of a key prosecution witness. During the third trial, at a hearing, the State requested the trial court limit the questioning of state witness David Roberson by defense counsel. David Roberson had cooperated with law enforcement in exchange for a dismissal of his first degree drug felony and misdemeanor charges, had his prior testimony sealed, and was given immunity by the State.[26] (direct appeal/PDR)

25.    Petitioner was unconstitutionally tried again after the prosecution engaged in misconduct designed to goad the defendant into moving for a mistrial.

       Petitioner was tried on June 5-6, 2012. The State requested and received a mistrial after the Court granted petitioner's motion to suppress. The State retried the case on September 17-18, 2013 and another mistrial was declared when the State elicited testimony from the complainant concerning petitioner being on parole at the time of the alleged offense. When the instant case was ready to be retired, trial counsel objected based on double jeopardy. The State forced the mistrial by asking a question the prosecutor knew would elicit a harmful and prejudicial response.[27] (same as point of error no. 19).

26.    Petitioner was retried for an offense which includes as an essential element the same issue of critical fact that was decided by 2 mistrials. Petitioner was tried 3 times after 2 mistrials caused by the State. Petitioner has been subjected to double jeopardy.[28]

27.    Variance: petitioner was convicted on the basis of facts different than those facts on which the charges were based.

       The indictment returned by the Grand Jury alleged that petitioner committed the offense of Deadly Conduct. The elements alleged were that petitioner "did then and there knowingly discharge a firearm at or in the direction of individuals, namely Pinkie Hardy and David Roberson." However, the jury was instructed that petitioner could be convicted if he "did then and there knowingly discharge a firearm at or in the direction of one or more individuals; namely Pinkie Hardy or David Roberson."[29]

28.    Outside influence upon a jury raises a presumption of prejudice that imposes a heavy burden on the State to overcome by showing that the influences were harmless to the Petitioner.

---

[26]Second Amended Petition, Claim 18 (docket entry no. 14); same as Claim 23 in Third Amended Petition (docket entry no. 71).

[27]Second Amended Petition, Claim 20 (docket entry no. 14).

[28]Second Amended Petition, Claim 21 (docket entry no. 14); same as Part 2 of Claim 6 in 4th Amended Petition (docket entry no. 95).

[29]Second Amended Petition, Claim 22 (docket entry no. 14).

On September 19, 2013 a second mistrial was granted due to the State's witness' prejudicial testimony concerning petitioner's history. The same information was allowed to be publicized on the front page of the Eagle newspaper published by Dave McDerman. This article revealed petitioner's entire prior history. Every potential juror was exposed to petitioner's prior history by this publishing. Then petitioner was tried weeks later on October 29, 2013 after petitioner's history was exposed.[30] (same as point of error no. 20)

29. Petitioner's sentence enhancement was enhanced on the basis of prior conviction which was unconstitutional.

As incorporated in Ground #19, petitioner was without counsel over a period of time then he was appointed counsel who did not investigate his case and had no knowledge of petitioner's case and allowed petitioner to enter a voluntary plea when petitioner had an affidavit to verify his innocence.[31]

30. Petitioner's conviction resulted from state court errors which taken together denied petitioner a fair trial. As incorporated in Grounds # 9, 12, 14, 18, 20-24.[32]

31. The trial court erred in denying petitioner's motion to quash indictment. Petitioner was indicted in one indictment for deadly conduct and unlawful possession of a firearm by a felon, enhanced. The State alleged in Count One, two separate manner and means of committing the offense of deadly conduct with the same deadly weapon. On September 13, 2013, the trial court denied petitioner's Motion to Quash. At the third trial, petitioner re-urged the motion, the court agreed that the motion to quash was the same ruled upon before and again denied the motion.[33] (direct appeal/PDR)

32. The trial court erred in denying petitioner's motion for mistrial.[34] (direct appeal/PDR)

33. The trial court erred in admitting evidence of serious bodily injury and car chase.[35] (direct appeal/PDR)

---

[30]Second Amended Petition, Claim 24 (docket entry no. 14).

[31]Second Amended Petition, Claim 25 (docket entry no. 14).

[32]Second Amended Petition, Claim 26 (docket entry no. 14).

[33]Third Amended Petition, Claim 20 (docket entry no. 71); same as Claim 11 in 4th Amended Petition (docket entry no. 95).

[34]Third Amended Petition, Claim 22 (docket entry no. 71).

[35]Third Amended Petition, Claim 24 (docket entry no. 71).

34. Judicial Egregious Manifest Error occurred when petitioner was unconstitutionally tried again after the State engaged in misconduct designed to goad the defense into moving for mistrial. Petitioner was tried on June 5-6, 2012. The State requested to holding a hearing on motions during trial. A motion to suppress was granted the State requested a mistrial and requested to appeal the Motion to Suppress. The State retried the case on September 17-18, 2013 and another mistrial was declared when the State elicited testimony from their witness concerning petitioner being on parole at the time of the alleged offense. When the instant case was ready to retry by the State trial counsel objected on the grounds of double jeopardy. The State forced the mistrial by asking a question the prosecutor knew would elicit a harmful and prejudicial response and the trial Judge should have sustained counsel's objection.[36]

35. Petitioner's sentence was enhanced on the basis of a prior conviction for which petitioner did not have counsel.[37]

    A conviction in case no. 1090275 in the 263rd District Court, Harris County, Texas was used to enhance petitioner's deadly conduct charge. Petitioner's counsel (Mike Hernandez) died. Petitioner remained in jail about two weeks without counsel after he wrote a letter to the court. Petitioner was brought to court on June 15, 2007 and was appointed counsel and notified counsel that petitioner had an affidavit and that the vehicle was not his. Counsel R.E. Wheelan then told petitioner that affidavits were inadmissible. Petitioner then signed for time on June 15, 2007. Counsel was on the case for ten minutes and he had no knowledge of petitioner's case.

36. Constructive denial of counsel actual innocence in cause #1090275. Petitioner was innocent of the charge that was used to enhance the deadly conduct charge. Petitioner retained an attorney in the cause #1090275 in the possession of controlled substance charge. Petitioner's attorney died (Attorney Mike Hernandez). Petitioner was brought to court weeks later and the court coordinator told petitioner that they could not allow him to sit in the county without an attorney on his case. Petitioner told the coordinator that the firm was supposed to replace his then attorney (Mike Hernandez). They insisted that they were appointing counsel. The court appointed R.E. Wheelan on June 15, 2007 the same day petitioner was brought to court. Petitioner notified Attorney R.E. Wheelan that he had an affidavit for the charge. Wheelan replied, "affidavits are inadmissible in court."

    Petitioner was unfamiliar with the law and was persuaded by counsel to enter a plea. Petitioner had spoken to his retained attorney before his death and he told petitioner the charges would be dismissed.

---

[36]Part 1 of Claim 6 in 4th Amended Petition (docket entry no. 95).

[37]Second Amended Petition, Claim 19 (docket entry no. 14).

Petitioner was told different by R.E. Wheelan. Petitioner filed a motion to withdraw the plea after going to the law library and recognizing that Wheelan had given him false information pertaining to affidavits. Petitioner filed a motion to withdraw and attached the affidavit from David West. In the affidavit Mr. West stated, "I take full responsibility for the controlled substance I left in my vehicle. I let Mr. Butler use he was unaware that it was in the vehicle.

Attorney R.E. Wheelan was on petitioner's case less then five minutes and did not investigate the facts of law surrounding petitioner's case before giving him improper advice.[38] (second state writ/abuse of the writ)

37.    Challenge    to    Collateral    Consequence/Void    Enhancement Paragraph/Plea Involuntary, Unintelligent and Based on Improper Advice

Petitioner case # 1090275 is void based on the fact that petitioner was constructively denied counsel at the time the conviction was obtained. Counsel gave petitioner improper advice pertaining to law on affidavits. Petitioner was constructively denied counsel when counsel did not investigate.[39] (second state writ/abuse of the writ)

38.    Insufficient Evidence: Petitioner's conviction was based on less than proof beyond a reasonable doubt of each and every element of the charged crime. As incorporated in Ground # 22, the indictment alleged that petitioner discharged a firearm in the direction of individuals, namely Pinkie Hardy and David Roberson. However, the jury was instructed different but all elements of the indictment still were not proven.[40] (direct appeal/PDR)

Standard of Review

Title 28 U.S.C. § 2254 authorizes a district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable

---

[38]Third Amended Petition, Claim 17 (docket entry no. 71).

[39]Third Amended Petition, Claim 18 (docket entry no. 71).

[40]Second Amended Petition, Claim 23 (docket entry no. 14); Third Amended Petition, Claim 21 (docket entry no. 71).

determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id.* An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id.* at 409-411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id.*

In addition, this court must accept as correct any factual determination made by the state courts unless the presumption of correctness is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").

Analysis

*1. Trial Transcript*

Petitioner alleges TDCJ confiscated his trial transcript during a cell search while petitioner was in the process of filing his state application for writ of habeas corpus and contends that the ultimate denial by the Texas Court of Criminal Appeals was due to the confiscation. This claim fails

12

for several reasons.

A claim raised in a federal habeas petition must be a challenge to the fact or duration of confinement or parole, rather than the rules, customs, and procedures affecting "conditions" of confinement or parole. *Cook v. Texas Dept. Of Criminal Justice Transitional Planning Dept.*, 37 F.3d 166, 168 (5th Cir. 1994). Petitioner's claim is akin to a denial of access to courts and, as such, does not contest the fact or duration of petitioner's confinement. A civil rights action is the appropriate legal vehicle to attack unconstitutional parole procedures or conditions of confinement. *Johnson v. Pfeiffer*, 821 F.2d 1120, 1123 (5th Cir. 1987); *Preiser v. Rodriguez*, 411 U.S. 475 484, 498 (1973). Petitioner's claim is not cognizable on federal habeas review. To the extent petitioner is challenging the state habeas proceedings, this Court cannot grant relief "to correct alleged errors in [such] proceedings. *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001); *see Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("infirmities in state habeas proceedings do not constitute grounds for relief in federal court."). Stated another way, "[a]n attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself." *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (internal quotations omitted). To the extent petitioner exerts this claim as an impediment to exhaustion, this claim will be addressed below.

*2. Exhaustion*

Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Thus, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). The exhaustion requirement "is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its

prisoners' federal rights." *Moore v. Quarterman*, 454 F.3d 484, 490-91 (5th Cir. 2006) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (internal citations omitted)). Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1)(B). A reviewing court may raise a petitioner's failure to exhaust *sua sponte. Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001).

To exhaust his state remedies under the applicable statutory framework, a habeas petitioner must fairly present "the substance of his claim to the state courts." *Moore,* 454 F.3d at 491 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986)). A federal habeas petitioner shall not be deemed to have exhausted the remedies available in the state courts "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(b)(1)(c). In Texas, a criminal defendant may challenge a conviction by taking the following paths: (1) the petitioner may file a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals; and/or (2) he may file a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. *See* TEX. CODE. CRIM. PROC. art. 11.07 § 3(c); *see also Busby v. Dretke*, 359 F.3d 708, 712 (5th Cir. 2004) ("habeas petitioners must exhaust state remedies by pursing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

Respondent argues several points of error are unexhausted and procedurally barred. Before answering the question of exhaustion, a discussion regarding the procedural posture of this case in both the state and federal court is required as the procedural history is complex.

On appeal, petitioner argued the following points of error: (1) the trial court erred in denying petitioner's motion to quash the indictment (point of error number 35 above), (2) the evidence is legally insufficient (point of error no. 38 above), (3) the trial court erred in denying petitioner's motion for mistrial (point of error 32 above), (4) the trial court erred in limiting the cross

examination and impeachment of a state witness (point of error number 24 above), and (5) the trial court erred in admitting evidence of serious bodily injury and car chase evidence (point of error no. 33). *See* Brief for Appellant (docket entry no. 41-15). After considering each of these claims, the Tenth Court of Appeals affirmed the conviction and sentence on January 8, 2015. *Butler v. State*, No. 10-13-00430-CR, pgs. 1-28 (docket entry no. 41-7).

Petitioner filed a PDR on February 20, 2015 asserting the following points of error: (1) the trial court erred in denying petitioner's motion to quash the indictment (point of error number 35 above), (2) the trial court erred in allowing illegally insufficient evidence to be entered into the trial, lessening the State's burden to prove beyond a reasonable doubt each element of the offense charged (point of error number 32 above), (3) the trial court erred in restricting the cross-examination of a state witness (point of error number 24 above), and (4) the trial court erred in allowing the state to present extraneous offenses and irrelevant facts to show petitioner was a "criminal or bad character" in general (point of error no. 33). *See* Petitioner's Petition for Discretionary Review (docket entry no. 41-12). The Texas Court of Criminal Appeals refused the petition on April 1, 2015. *Butler v. State*, No. PD-0129-15

Petitioner filed his first state application for writ of habeas corpus on September 28, 2016 asserting eleven claims. State Application for Writ of Habeas Corpus, pg. 6 (docket entry no. 44-12). Petitioner filed a Motion to Amend his state application for writ of habeas corpus on December 13, 2016 adding three claims. Amended State Writ, pg. 60 (docket entry no. 44-13).[41] Fourteen claims were ultimately considered by the state trial court in its Findings of Fact and Conclusions of Law filed February 3, 2017. *See* Findings of Fact and Conclusions of Law ("FFCL"), pg. 195 (docket entry no. 44-13). Those claims are outlined as points of error number 1-9 and 21-23 outlined above.

---

[41] The Trial Court in his Findings of Fact and Conclusions of law referenced the Motion to Amend as a Supplemental Petition.

On February 20, 2017, petitioner filed a Second Amended State Application for Writ of Habeas Corpus adding two additional claims outlined as points of error number 10 and 11 above. Although not considered by the trial court in its Findings of Fact and Conclusions of Law, they were filed before the Texas Court of Criminal Appeals denied the writ. This Court can only presume they were considered by the Texas Court of Criminal Appeals. Respondent, while arguing they are unexhausted, offers no substantive reason and/or case law to guide the Court in either direction.

Finally, although less than clear, it would appear from the record that petitioner attempted to amend his petition on February 23, 2017, to add an additional claim of ineffective assistance of counsel for failing to offer a plea deal for deadly conduct (referenced as point of error number 12 outlined above) . *See* Motion to Reconsider, pg. 1 (docket entry no. 44-8). The Texas Court of Criminal Appeals denied the state application for writ of habeas corpus on March 8, 2017 (docket entry no. 44-6). In the Motion to Reconsider, petitioner states that the motion to amend was not forwarded to the Texas Court of Criminal Appeals before it made its determination. The Texas Court of Criminal Appeals ultimately denied the Motion to Reconsider on April 7, 2017. *See* Motion to Reconsider pg. 1 (docket entry no. 44-8). Without any clarity in the record as to whether the Texas Court of Criminal Appeals considered this claim, this Court out of fairness will consider it exhausted. Again, Respondent argues the claim is unexhausted but offers no substantive reason and/or case law to guide the Court in either direction.

On February 27, 2018, petitioner then filed another state application for writ of habeas corpus with the Texas Court of Criminal Appeals asserting claims asserting points of error numbers 14, 15, 36 and 37 outlined above. *See* Writ (docket entry no. 112-1). Petitioner sought leave to amend this second writ on March 29, 2018 although it appears all the claims were duplicative of claims already asserted. Motion to Amend and Supplement Ground Three, pg. 20 (docket entry no. 112-3). On June 14, 2018, the Texas Court of Criminal Appeals dismissed the second writ as an abuse of the writ. Order, pg. 64 (docket entry no. 112-3). Petitioner filed a Writ of Mandamus which was ultimately denied. Order, pg. 1 (docket entry no. 112-11).

After a careful review of the state court records, the Court finds that points of error no. 13-18, 25-30 and 34-37 are unexhausted and procedurally barred.

Specifically, points of error number 13, 16-18, 25-30 and 34-35 were never presented to the Texas Court of Criminal Appeals for review. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). Some of these claims were simply never presented to the state court for review while others, although presented and exhausted as ineffective assistance of counsel claims, were reasserted as trial court error or general error claims that were not presented to the state court for review. The state courts must have been apprised of the same facts and legal theories that a petitioner urges in his federal petitioner. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *see also Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) ("A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).

These points of error, in turn, are also procedurally barred. C*oleman v. Thompson*, 501 U.S. 722, 735 (1991). The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to cases where a petitioner fails to exhaust his state court remedies and the state court to which he would be required to present these unexhausted claims would not find them to be procedurally barred. *Id*. at 735, n. 1. In such cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id*; *see Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (finding an unexhausted claim to be procedurally barred). Additionally, a petitioner's failure to present his claims in a procedurally proper manner constitutes a procedural default that excludes him from federal habeas corpus review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 848 (1999).

If petitioner were to attempt to file an additional state habeas application to bring these claims before the Texas Court of Criminal Appeals, the Texas Court of Criminal Appeals would now find the allegations to be procedurally barred under the Texas abuse of the writ doctrine. *Ex parte*

17

*Whiteside*, 12 S.W,3d 819, 821 (Tex. Crim. App. 2000) (TEX. CODE CRIM. P. art. 11.07 § 4 applies to all subsequent applications); *Ex parte Barber*, 879 S.W.2d 889, 891 n. 1 (Tex. Crim. App. 1994). Indeed, the TCCA rejected petitioner's second application for writ of habeas corpus asserting points of error 14-15 and 36-37. Therefore, under the federal procedural default doctrine, these claims are barred from federal habeas review as well. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (finding the Texas abuse of the writ doctrine to be an adequate procedural bar for the purposes of federal habeas review); *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997) (petitioner could not satisfy the standard for avoiding a state citation for abuse of the state writ, thus claims procedurally defaulted).

Finally, petitioner has failed to demonstrate the requisite cause and prejudice to excuse the default of his claims, or that a fundamental miscarriage of justice would result from this Court's refusal to consider his claims. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (citing *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991)). While petitioner asserts actual innocence to overcome the procedural bar, petitioner has not presented this Court with any new, reliable evidence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" in support of this claim. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner has failed to show that, in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Id*. at 329. This is true whether petitioner argues actual innocence of the underlying conviction being challenged in this case or the prior conviction (to which he plead guilty) used to enhance his sentence. Regardless, the exception only applies to actually innocence of the crime of conviction or of the capital sentence and not to a predicate offense justifying an enhanced sentence. *See Monroe v. United States, 2013 WL 6199955* (5th Cir. Nov. 6. 2013) (§ 2255 context) (not designated for publication) (citing *Dretke v. Haley*, 541 U.S. 386, 388 (2004)); *Kinder v. Purdy,* 222 F.3d 209, 213-14 (5th Cir. 2000) (§ 2255 context).

To the extent petitioner argues TDCJ somehow obstructed his ability to exhaust his claims by destroying his trial transcripts, this claim lacks merit. As outlined by the Magistrate Judge in an

initial Report and Recommendation, Texas Code of Criminal Procedure 11.07 does not require an applicant to have a trial transcript in order to file a state application for writ of habeas corpus. *See* Report and Recommendation (docket entry no. 8). Regardless, a review of petitioner's first state application for writ of habeas corpus reveals petitioner made references to the Reporter's Record in outlining his claims. It would appear petitioner had the trial transcripts in his possession when drafting his first state application for writ of habeas corpus.

*3. Merits*

    A. *Ineffective Assistance of Counsel*

In order to establish an ineffective assistance of counsel claim, petitioner must prove counsel's performance was deficient, and the deficient performance prejudiced petitioner's defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Because petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Id*. To overcome the presumption that counsel provided reasonably effective assistance, petitioner must prove his attorney's performance was objectively unreasonable in light of the facts of petitioner's case, viewed as of the time of the attorney's conduct. *Id*. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, petitioner must also show prejudice resulting from counsel's inadequate performance. *Strickland*, 466 U.S. at 691-92. Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner must show a substantial likelihood that the result would have been different if counsel performed

competently. *Richter*, 562 U.S. at 112. Mere allegations of prejudice are insufficient; a petitioner must affirmatively prove, by a preponderance of the evidence, that he was prejudiced due to counsel's deficient performance. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). In determining whether petitioner was prejudiced, the Court must consider the totality of the evidence before the fact-finder. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010).

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating the claim on direct review of a federal conviction. *Richter*, 562 U.S. at 101. The key question on habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. Even if petitioner has a strong case for granting relief, that does not mean the court was unreasonable in denying relief. *Id*. at 102.

Petitioner asserts twelve claims of ineffective assistance of counsel as to his counsel during pre-trial, trial and appeal.

### 1. Counsel During Pre-Trial (Point of Error No. 10)

Petitioner argues his counsel pre-trial counsel (Dennis Richards) gave him incorrect sentencing advice before he advised petitioner to attend the grand jury. Petitioner states counsel failed to investigate the law and facts of the case and, if counsel would not have given petitioner the advise to admit to a crime during the grand jury proceedings on a separate indictment, petitioner would not have been indicted for deadly conduct.

Petitioner's trial counsel (Kyle Hawthorn) filed a Motion to Suppress petitioner's grand jury testimony on April 5, 2012. After hearing the evidence and arguments concerning the motion, the trial court granted the motion to suppress finding Mr. Richards ineffective. The State appealed the order granting the motion to suppress. Memorandum Opinion, pgs. 120-129 (docket entry no. 44-12). The Tenth Court of Appeals ultimately reversed the trial court's order and remanded for further proceedings. *Id*. In reviewing the trial court's finding of ineffective assistance of counsel as it related to the grand jury testimony and the motion to suppress, the Tenth Court of Appeals noted the

following:

> Butler's attorney informed the State that Butler wished to appear before the grand jury. The target warnings were given in writing to Butler's attorney and orally to Butler at the grand jury proceedings. The warnings included that Butler had the right to refuse to answer any questions that might incriminate him. Butler waived his rights and testified.
>
> Butler's attorney testified at the hearing on the motion to suppress that he discussed with the [sic] Butler the consequences of testifying before the grand jury that he was in possession of a firearm. They further discussed that it would be hard to deny Butler possessed a firearm because the police caught him with the weapon in Waller County. The attorney told Butler that if he testified, he would "make the case for them in Waller," Butler wanted to testify before the grand jury that the shooting that occurred on May 28, 2011 was an accident. Butler believed that Hardy would also appear before the grand jury and state that the shooting was an accident. Butler hoped to get "no billed" on the aggravated assault charges and then deal with the remaining charges.
>
> Defense counsel has the primary responsibility to inform the defendant of his right to testify, including the fact that the ultimate decision belongs to the defendant. *See Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005). After discussing the benefits and consequences of testifying before the grand jury with his attorney, Butler wanted to testify. Butler has not shown that trial counsel's performance was deficient.
>
> Moreover, Butler has not shown that the result of the proceeding would have been different but for counsel's unprofessional errors. Butler was stopped by police, and police found a firearm in the vehicle. Butler wrote a letter to Hardy's father admitting that he shot Hardy, but stating that it was an accident.

*Id.*, pgs. 125-126.

First, in reviewing the record in this case from the trial proceedings, this Court notes that petitioner did not testify. Reporter's Record, Vol. 9 of 16, pg. 96 (docket entry no. 42-1). There is no indication in the record that petitioner's testimony from the grand jury proceeding was entered as evidence into trial. Regardless, petitioner has neither shown ineffectiveness by pre-trial counsel nor prejudice as it relates to his grand jury testimony. As outlined by the Tenth Court of Appeals, petitioner voluntarily chose to testify after discussing the consequences of testifying with pre-trial counsel as petitioner wanted to testify that it was an accident and hoped to get "no billed" on the aggravated assault charges. Even assuming that pre-trial counsel's performance was somehow deficient, petitioner still cannot show prejudice. *Strickland,* 466 U.S. 668 (1984). The evidence

establishes that petitioner was stopped by police in Waller County who found a firearm in the vehicle. Petitioner wrote a letter to Hardy's father admitting he shot her but stated it was an accident. This evidence was independent of the testimony elicited at the grand jury proceedings in addition to the testimony of Hardy and Robinson, the victims in this case, in addition to other witnesses.

The key question on habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. Petitioner has simply failed to show the Texas Court of Criminal Appeals' decision in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

### 2. *Counsel During Trial (Point of Error 1-3, 5, 9, 11-12)*

a. Petitioner complains that the indictment alleged that he "knowingly discharged a firearm at or in the direction of Pinkie Hardy <u>and</u> David Roberson" while the jury charge required the State to prove that the defendant "knowingly discharged a firearm at or in the direction of <u>one or more</u> individuals; namely; Pinkie Hardy <u>or</u> David Robertson." Petitioner alleges trial counsel failed to object on the grounds that the jury charge constituted 1) a constructive amendment of indictment, 2) a material and fatal variance, 3) reduced the State's burden of proof, 4) right to unanimous verdict, 5) violated petitioner's rights under the United States Constitution to majority verdict, 6) denied fair notice, and 7) violated petitioner's right against double jeopardy (Point of Error No. 1).

Trial counsel in his affidavit stated that it is appropriate for the indictment to allege the defendant knowingly discharged a firearm at or in the direction of Pinkie Hardy and David Robertson while the jury charge alleges at or in the direction of Pinkie Hardy or David Robertson. Hawthorne Affidavit, pg. 113 (docket entry no. 44-13). Counsel cited to case law in support of his argument that an objection to the jury charge related to this issue would have been meritless. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 2011) (citations omitted) ("It is appropriate for the indictment to allege different methods of committing the offense in the conjunctive and the

jury to be charged in the disjunctive"). The state trial court in reviewing this claim found counsel's affidavit credible and consistent with the trial proceedings and specifically found that counsel was not required to make a meritless motion. FFCL, pg. 200 (docket entry no. 44-13) (citing *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995)).

Counsel is not required to make a meritless motion. *Gibson*, 55 F.3d at 179. Petitioner has failed to show deficient performance and has failed to show the decision by the Texas Court of Criminal Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

b. Petitioner next argues counsel failed to object to the State subjecting him to double jeopardy by trying him for a greater and lesser-included offense at the same time. Petitioner alleges he suffered egregious harm based on the fact that the jury charge was erroneous in allowing some of the juror's to convict for deadly conduct. Petitioner contends this violated petitioner's state and federal constitutional rights to jury unanimity, majority verdict, and against double jeopardy. (Point of Error No. 2). In considering this claim, the state trial court stated the following:

28. Applicant claims that trial counsel was ineffective by failing to object to the indictment when it subjected him to double jeopardy. Specifically, Applicant complains that the indictment subjected him to double jeopardy because he was tried for greater (Aggravated Assault) and lesser-included (Deadly Conduct) offenses at the same time. (Application, pg. 8).

29. Mr. Hawthorne states, in his credible affidavit, that the indictment did not subject Applicant to double jeopardy because the State proceeded to trial on only one count, Deadly Conduct Discharging a Firearm. *See* State's Exhibit D attached to the State's Answer: Affidavit of Kyle Hawthorne, pg. 8.

30. This Court finds that Applicant was never tried for Aggravated Assault and Deadly Conduct at the same time, and the indictment did not subject Applicant to double jeopardy.

31. Additionally, this Court finds that Applicant fails to meet the first prong of *Strickland*.

23

FFCL, pg. 202 (docket entry no. 44-13).

The record confirms that petitioner was only tried for deadly conduct discharging a firearm. Counsel is not required to file frivolous or meritless motions. *Gibson*, 55 F.3d at 179. Petitioner has failed to show deficient performance and has failed to show the decision by the Texas Court of Criminal Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

c. Petitioner complains trial counsel failed to re-object to the murder statement made by the State after a first objection had been sustained, despite the trial admonishment to the first objection, they reiterated the statement that appellant "came to the community sells poison then commit's [sic] murder while he's here." Petitioner states trial counsel failed to re-object and move for a mistrial. (Point of Error No. 3).

Petitioner's summary of the statement is not entirely accurate. The statement actually challenged on state habeas review is as follows: "if you have this drug dealer who came here to this community from Houston to sell drugs, if Pinkie had died and he was charged with murder, there's nothing to talk about." FFCL, pg. 202. The state trial court on habeas review, however, found that the State's argument was a reasonable deduction from the evidence. *FFCL*, pg. 202. The state trial court, finding trial counsel's affidavit credible, found that the statement was a reasonable deduction from the evidence considering the extent of Pinkie Hardy's injuries. *Id*. "Pinkie Hardy was severely injured and bleeding uncontrollably from the gunshot wound. (8 RR 32). In fact, Pinkie Hardy was unconscious and in a coma for two weeks after the shooting. (8 RR 136)." *Id*.

Petitioner has failed to demonstrate why this conclusion was incorrect or what objection trial counsel failed to make. Petitioner fails to show deficient performance or prejudice under *Strickland*. Petitioner has also failed to show the decision by the Texas Court of Criminal Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

d. Petitioner's next ineffective assistance of counsel claim alleges that trial counsel failed to properly argue a motion to quash the indictment. Petitioner states, "[t]rial counsel moved to quash the indictment on grounds that the deadly conduct allegation contained in the indictment failed to state all the elements of the offense of deadly conduct by failing to state a culpable mental state. However, trial counsel's motion was incorrectly stated, because the indictment instead alleged the wrong culpable mental state." (Point of Error No. 5)

"The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985); *see also McKay v. Collins*, 12 F.3d 66, 68-69 (5th Cir. 1994). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). The state court rejected this claim, thereby necessarily finding that the indictment was sufficient. Federal habeas review of that determination is precluded. *See Alexander*, 775 F.2d at 598. Moreover, petitioner has not shown that the state court's rejection of this claim was unreasonable.

Under Texas law, all that is required for jurisdiction is the presentment of the indictment to the court. *McKay*, 12 F.3d at 69 (noting that a defect in substance in an indictment does not deprive a state trial court of jurisdiction) (citing *Moreno v. Estelle*, 717 F.2d 171 (5th Cir. 1983)). An indictment must include "[t]he essential elements of the offense," but they need not be "expressed in any specific terms" to afford notice sufficient to satisfy constitutional requirements. *Id*. (citation omitted). Ultimately, "[a]n indictment should be found sufficient unless no reasonable construction

of the indictment would charge the offense for which the defendant has been convicted." *Id.* (citation omitted).

In reviewing this claim, the trial court on state habeas review stated the following:

46. An indictment tracking the language of the statute will usually satisfy constitutional and statutory requirements so long as the statute satisfies the constitutional requirement of notice. *Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007).

47. Mr. Hawthorne, in his credible affidavit, states that the motion to quash was properly denied by the trial court because the State alleged the proper mental states for the offense of Deadly Conduct and the language of the indictment tracked the language of the statute. *See* State's Exhibit D: Affidavit of Kyle Hawthorne, pp. 10-11.

48. This Court finds that Mr. Hawthorne was not ineffective and did not file an incorrect motion to quash the indictment because the indictment tracked the statutory language.

49. This Court additionally finds that Applicant fails to meet the first prong of *Strickland*.

FFCL, pg. 205. Petitioner has simply failed to show that the indictment failed to invoke the court's jurisdiction. Petitioner has also failed to show the decision by the Texas Court of Criminal Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

e. Petitioner next alleges trial counsel failed to call petitioner's Waller County attorney at the pre-trial hearing on the "Writ of Habeas Corpus on Double Jeopardy and Collateral Estoppel" as a witness to testify to the fact that the "firearm was dismissed as part of a plea agreement and that it should not be able to be used in any proceedings afterward." (Point of Error No. 9). Although not argued in his federal petition for writ of habeas corpus, petitioner also alleged in his state application for writ of habeas corpus that counsel was ineffective for not objecting to double jeopardy for prosecution of unlawful possession of firearm by a felon during the October 29, 2013 trial. On state habeas review, the trial court noted the following:

100. Mr. Hawthorne, in his credible affidavit, explains that "[w]hile the Applicant was indicted for Unlawful Possession of a Firearm by a Felon, the Applicant was not tried nor convicted of this offense. (8 RR 28). The Applicant was only tried and convicted for the offense of Deadly Conduct Discharging a Firearm. (9 RR 31)." *See* State's Exhibit D: Affidavit of Kyle Hawthorne, pg. 13.

101. This Court finds that since Applicant was only tried and convicted for the offense of Deadly Conduct Discharging a Firearm, Applicant's thirteenth ground is without merit.

FFCL, pg. 217.

Petitioner has failed to demonstrate deficient performance and has failed to show prejudice in not calling his Waller County attorney as a witness during the hearing. Petitioner has also failed to show the decision by the Texas Court of Criminal Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

f. Petitioner asserts that trial counsel was ineffective in failing to request for instruction on the lesser included offense instruction when the criteria was satisfied. In addition, petitioner asserts counsel failed to afford petitioner his right to allocution at sentencing. (Point of Error No. 11).

In reviewing this claim, petitioner offers no indication as to what the lesser included offense instruction would be and what "criteria" were satisfied. Petitioner also offers no specifics as to allegation that counsel failed to afford petitioner his right to allocution at sentencing. Petitioner's claims are conclusory and are bare assertions which do not support a petition for a writ of habeas corpus. *See Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Relief should also be denied as petitioner has failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, petitioner has failed to overcome the "doubly"

deferential standards that must be accorded to his trial attorney in light of both *Strickland* and §
2254(d). *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). This claim is denied.

g. Petitioner next asserts counsel failed to offer petitioner a plea offer on deadly conduct.
(Point of Error No. 12). Petitioner offers nothing more when asserting this claim. Petitioner's
claims are conclusory and are bare assertions which do not support a petition for a writ of habeas
corpus. *See Miller,* 200 F.3d at 274; *Koch,* 907 F.2d at 530; *Ross*, 694 F.2d at 1011. Regardless,
the prosecution has the sole province to extend plea offers to the defense. There is simply nothing
in the record that indicates the prosecution extended a plea offer to petitioner that somehow was not
communicated to him by counsel. Relief should also be denied as petitioner has failed to show, as
required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary
to, or involved an unreasonable application of, clearly established federal law as determined by the
Supreme Court of the United States, or resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the state court proceedings.
Moreover, petitioner has failed to overcome the "doubly" deferential standards that must be accorded
to his trial attorney in light of both *Strickland* and § 2254(d). *See Harrington v. Richter*, 562 U.S.
86, 105 (2011). This claim is denied.

   *3. Counsel During Appeal (Points of Error No. 4, 6, 7-8)*

   a. Petitioner next argues appellate counsel, Mary Jo Holloway, failed to argue the cumulative
effect of the three instances of prosecutorial misconduct which denied petitioner a fair trial. (Point
of Error No. 4). The Tenth Court of Appeals addressed the individual instances of prosecutorial
misconduct and they are outlined as follows:

> First, appellant asserts that the trial court should have granted his motion for
> mistrial because of Ebony Hardy's reference to her mother being shot by a
> boyfriend. The following exchange serves as the basis for appellant's
> contention:

> [The State]:        When you saw her [Pinkie] out in the grass, what did
>                     you think?

> [Hardy]:            I just thought about my mother.

| | |
|---|---|
| Q: | And what happened to her? |
| A: | Her boyfriend also shot her in the head. |
| [Defense Counsel]: | Objection,[Y]our Honor. We're going to object to anything about what happened to – |
| THE COURT: | I sustain the objection. |
| [Defense Counsel]: | We ask the jury be instructed to disregard. |
| THE COURT: | Ladies and gentleman, disregard that last statement[,] which had nothing to do with this case. Strike it from your mind[,] and do not consider it for any purpose. |
| [Defense Counsel]: | We would ask for a mistrial. |
| THE COURT: | That'll be denied. |

*Butler v. State*, pgs. 7-8, No. 10-13-00430-CR (docket entry no. 41-7). In determining the trial court did not abuse its discretion in denying the motion for mistrial, the Tenth Court of Appeals noted that exchange was not "so inflammatory as to be incurable by an instruction to disregard." *Id*. (citation omitted). The relevant comment for the second motion for mistrial related to testimony provided by David Roberson, one of Pinkie Hardy's boyfriends. *Id*.

> At trial, Roberson, an individual with numerous stints in prison, indicated that he feared for his family's safety because of his trial testimony. Apparently, Roberson's fear stemmed from evidence presented at a hearing on appellant's motion to suppress. At that hearing, the evidence demonstrated that Roberson had been indicted for first-degree felony possession of a controlled substance with intent to deliver; however, that charge was dismissed based on Roberson's prior work as a confidential informant for the Bryan Police Department. This evidence was suppressed, and a transcript of the hearing was produced. A copy of this transcript revealing Roberson's status as a confidential informant was given to appellant in the jail by appellant's appellate counsel. The State alleged that appellant made a copy the transcript and distributed it throughout the jail before it was discovered by law enforcement. At a hearing held outside the presence of the jury, the State asserted that Roberson and his family were threatened as a result of appellant's distribution of the hearing transcript.

> Thereafter, the trial court determined that the transcript of Roberson's testimony at the hearing on appellant's motion to suppress and the discussion of Roberson's status as a confidential informant should be sealed from appellant. As such, defense counsel and counsel for the State were ordered not to provide appellant. As such, defense counsel and counsel for the State were ordered not to provide appellant with copies of this information. Appellant's counsel argued that he should be able to cross-examine Roberson

about the sealing of the transcript, arguing that the sealing provided him an incentive to testify in favor of the State. In response, the trial court ruled that the sealing of the transcript was admissible to impeach Roberson; however, the trial court noted that the State could ask Roberson about the reason behind the sealing of the transcript.

On direct-examination, the State asked Roberson about his concerns about there being in existence a written transcript, to which Roberson responded, "Right." Defense counsel objected, which the trial court overruled. Next, the State asked the following questions:

| [The State]: | And did we – after you brought that up to us, did we tell you we had asked the judge to enter an order to seal that particular part of the transcript so that it would exist for the defendant's lawyers for appellate purposes but it wouldn't be available to other people? |
|---|---|
| [Roberson]: | Yes. |
| Q: | And was that – is that because you feared for your safety? |
| A: | Not so much as my family's. I mean, I'm good. |

Defense counsel objected to this last question and requested that the trial court issue an instruction to the jury to disregard. Defense counsel also moved for a mistrial. In response, the trial court sustained defense counsel's objection and issued an instruction to the jury to disregard the question and answer pertaining to safety. However, the trial court denied defense counsel's motion for mistrial.

*Id.*, pgs. 9-10.

In finding the trial court did not abuse its discretion in denying the motion for mistrial, the Tenth Court of Appeals noted, "[n]othing in Roberson's testimony expressly implicated appellant or explained why Roberson feared for his safety and the safety of his family. Therefore, based on our review of the record, we cannot say that the question and answer pertaining to safety was so inflammatory as to undermine the efficacy of the trial court's instruction to disregard." *Id.*, pg. 11 (citations omitted).

The last motion for mistrial pertained to the prosecutor's argument during closing arguments:

If Pinkie Hardy had died, as the doctor said by all account she should have, and we're standing here arguing to you today on a murder case. With the kind of criminal history that he [appellant] has, you have a

drug dealer from Houston who comes into this community to sell poison and then commits a murder while he's here.

Defense counsel objected and requested a jury instruction to disregard and a mistrial. The trial court sustained counsel's objection and instructed the jury to disregard the "murder statement of counsel."

Assuming, without deciding, that the complained-of statement *was* improper, based on our review of the record, we conclude that the trial court's instruction to disregard cured any error.

*Id.*, pgs. 12-13.

In reviewing this point of error, the state trial court on habeas review stated the following:

38. The cumulative effect of non-errors cannot lead to error. *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999, no pet.).

39. Improper questioning by a prosecutor is rendered harmless by an instruction to disregard the question. *Wilson v. State*, 819 S.W.2d 662, 664 (Tex. App. – Corpus Christi 1991, pet. ref'd) (citing *Rogers v. State*, 725 S.W.2d 350, 359 (Tex. App. – Houston [1st Dist.] 1987, no pet.)). There are few extreme exceptions where the improper question cannot be rendered harmless by an instruction to disregard. *Id.* (citations omitted).

40. For Applicant's first and second motion for mistrial, the Tenth Court of Appeals stated that based on its review of the record, any error from the prosecutor's questioning and statements was cured by the instruction to disregard. *Butler v. State*, No. 10-13-00430-CR, 2015 WL 128908, at *4-5 (Tex. App. – Waco Jan. 8, 2015, pet. ref'd).

41. For Applicant's third motion for mistrial based on the State's closing argument, the Tenth Court of Appeals also stated "based on our review of the record, we conclude that the trial court's instruction to disregard cured any error." *Butler*, No. 10-13-00430-CR, 2015 WL 128908, at *4-5) (citing *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992)).

42. This Court finds that since any error from the three motions for mistrial was cured by the trial judge's instruction, there can be no cumulative effect from the errors.

43. This Court also finds that Applicant fails to meet the first prong of *Strickland*.

FFCL, pg. 204.

Cumulative error in habeas corpus review is a narrow and rare form of a due process violation.

*Derden*, 978 F.2d 1453, 1461 (5th Cir. 1992). In order to satisfy the cumulative-error rule in the Fifth Circuit, a federal habeas petitioner must show that (1) errors occurred during the petitioner's state trial

court proceeding, (2) the errors are not procedurally barred, (3) the errors rise to the level of constitutional deprivations, and (4) the record as a whole reveals that an unfair trial resulted from those errors. *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996); *Derden*, 978 F.2d at 1458. Any cumulative error theory must refer only to errors committed in the state trial court. A habeas petitioner may not just complain of unfavorable rulings or events in the effort to cumulate errors. *See Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) (citing *United States v. Rivera*, 900 F.2d 1462, 1470-71 (10th Cir. 1990)) (en banc); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Twenty times zero equals zero.")). If an action of the trial court cured a putative error, the petitioner is complaining only of an adverse event rather than actual error. *Id.* (comparing to *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).

To prevail on a claim that appellate counsel was constitutionally ineffective, a petitioner must show his appellate counsel unreasonably failed to discover and assert a non-frivolous issue and establish a reasonable probability he would have prevailed on this issue on appeal but for his counsel's deficient representation. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001); *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Effective appellate counsel are not required to assert every non-frivolous available ground for appeal; instead, effective appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Green* v. *Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Appellate counsel has discretion to exclude even a non-frivolous issue if said issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issue that Anderson argues his counsel should have raised on direct appeal . . . lack merit. As such, failure to raise these issues did not prejudice Anderson."); *Penson v. Ohio*, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); *Kossie v. Thaler*, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the unasserted claims are stronger than those that were in fact raised).

In the present case, both the appellate court and state trial court on habeas review determined that there was no error as the instructions to the jury to disregard were sufficient to cure any error. The alleged errors, whether considered individually or cumulatively, did not assume constitutional significance nor did they render the trial fundamentally unfair. As previously stated, appellate counsel is not required to make frivolous motions. As such, petitioner has failed to show deficient performance and prejudice. Petitioner has also failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, petitioner has failed to overcome the "doubly" deferential standards that must be accorded to his trial attorney in light of both *Strickland* and § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). This claim is denied.

b. Petitioner next complains that appellate counsel failed to raise a double jeopardy claim. Petitioner states that "on September 18, 2013 the second mistrial was caused by the State questioning its own witness with questions the prosecutor knew, or should have know, would elicit harmful and prejudicial response. The prosecutor forced the mistrial by "goading" the defense to move for a mistrial. Trial counsel objected to proceeding to the October 29, 2013 trial on the grounds of double jeopardy. Appellant counsel failed to raise this reversible error." (Point of Error No. 6).

The state trial court on habeas review found that "appellate counsel's decision not to raise the double jeopardy claim on appeal was not 'objectively unreasonable.' In doing so, this Court adopts its findings/conclusions to Ground Six, *supra*." FFCL, pg. 208.

Ground Six in petitioner's state application for writ of habeas corpus asserted that petitioner was subjected to double jeopardy during the October 30, 2013 trial. *Id*., pg. 206. The trial court made the following conclusions of law with respect to this claim:

> 50. Applicant states that when the case was previously tried on September 17-18, 2013, defense counsel requested and received a mistrial. (Application, pg. 16). Applicant argues that the mistrial was forced by the prosecutor asking questions he knew "would illicit a harmful and prejudicial response."

(Application, pg. 16).

51. Double jeopardy does not bar a retrial when a mistrial is granted at the defendant's request unless the defendant is able to show that the prosecution engaged in conduct that was intended to provoke the defendant into moving for a mistrial. *Ex parte Ahn*, No. 08-14-00082-CR, 2015 WL 4940053, at *1 (Tex. App. – El Paso Aug. 19, 2015) (citing *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982)).

52. The prosecutor's conduct in provoking a mistrial must be deliberate or reckless to show that the mistrial resulted from prosecutorial misconduct. *See Ex parte Mallonee*, No. 05-03-0072-CR, 2003 WL 1735241, at *4 (Tex. App. – Dallas, April 2, 2003).

53. In a post-conviction habeas corpus application, the evidence is viewed in the "light most favorable to the trial court's ruling." *Ex parte Ahn*, No., 08-14-0082-CR, 2015 WL 4940053, at *2 (citing *Ex parte Masonheimer*, 220 S.W.3d 494, 507 (Tex. Crim. App. 2007)).

54. This Court finds that the record shows that, rather than deliberate provocation, the State was surprised by the statements made by the witness, Pinkie Hardy. (7 RR 19-20).

55. This Court also finds that there is no evidence (and Applicant cites to no evidence in the record) demonstrating that the State deliberately or recklessly provoked Applicant into moving for a mistrial, and thus, Applicant's sixth ground is without merit.

FFCL, pgs. 206-207. When reviewing petitioner's ineffective assistance of appellate counsel claim for not asserting double jeopardy, the trial court specifically found petitioner failed to meet the two part *Strickland* test. *Id.*, pg. 208. As previously stated, effective appellate counsel are not required to assert every non-frivolous available ground for appeal; instead, effective appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. *Green* v. *Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Appellate counsel has discretion to exclude even a non-frivolous issue if said issue was unlikely to prevail. *See Anderson v. Quarterman*, 204 F. App'x 402, 410 (5th Cir. 2006). Petitioner has again failed to show deficient performance and prejudice. Petitioner has also failed to show, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Moreover, petitioner has failed to overcome the "doubly" deferential standards that must be accorded to his trial attorney in light of both *Strickland* and § 2254(d). *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). This claim is denied.

c. Petitioner next asserts appellate counsel failed to comport her argument to the trial lawyers objections and waived petitioner's right to appeal by failing to comply with the law. (Point of Error No. 7). Petitioner does not expound on this claim any further until an amended federal petition filed on February 28, 2018. Amended Petition, pg. 14 (docket entry no. 71). Petitioner, however, only refers this Court to the opinion of the Tenth Court of Appeals without outlining the specifics of his claim. In his state habeas application, petitioner also provided no specifics as to how counsel failed to comport her argument to the trial lawyer's objections and simply made a reference to the opinion of the appellate court. The trial court on state habeas review noted the conclusory nature of petitioner's allegations with respect to this claim and then referred its conclusion of law as it related to petitioner's ground five on state habeas (trial counsel was ineffective for filing an incorrect motion to quash the indictment because it failed to state a culpable mental state)[1] and found that petitioner failed to show deficient performance and prejudice. FFCL, pg. 210-11.

The Tenth Court of Appeals noted with respect to petitioner's arguments concerning culpable mental states in the indictment:

> In his motion to quash, appellant also argues that the deadly-conduct allegation contained in the indictment failed to state all the elements of the offense of deadly conduct by failing to state a culpable mental state. However, on appeal, appellant asserts that the indictment alleged the wrong culpable mental state. Specifically, appellant contends that the "knowing" culpable mental state refers to the discharging of a firearm, and the "reckless" culpable mental state pertains to appellant's knowledge that the trailer house was occupied.
>
> Based on our review of the record, appellant's complaint on appeal pertaining to the culpable mental states listed in the indictment do not comport with appellant's complaints made in his motion to quash. A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the

---

[1] The trial court mistakenly referenced state habeas ground four which related to the cumulative error argument.

> complaint made a trial. *See* TEX. R. APP. P. 33.1; *see also Lovill v. State*, 319
> S.W.3d 687, 691-92 (Tex. Crim. App. 2009). Accordingly, because
> appellant's contention does not comport with the argument made at trial, this
> contention presents nothing for review. *See* TEX. R. APP. P. 33.1; *see also
> Lovill*, 319 S.W.3d at 691-92.

*Butler v. State*, pgs. 5-6 (docket entry no. 41-7). As previously stated in section 2(d), the indictment

was sufficient to invoke the court's jurisdiction and, as such, petitioner cannot show prejudice even

assuming appellate counsel's performance was somehow deficient in not comporting her argument to

trial counsel's argument relating to the indictment. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.

1985); *see also McKay v. Collins*, 12 F.3d 66, 68-69 (5th Cir. 1994). Petitioner has also failed to show

the decision by the Texas Court of Criminal Appeals in denying this claim resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted

in a decision based on an unreasonable determination of the facts in light of the evidence presented in

state court. 28 U.S.C. § 2254(d). This claim is denied.

    d. Petitioner's last claim of ineffective assistance is that appellate counsel failed to cite any

relevant authority in support of insufficiency of the evidence claim based on the State's failure to elect

between alternative manner and means of committing deadly conduct. (Point of Error No. 8). On state

habeas review, the trial court stated the following:

> 77. The Tenth Court of Appeals states that the jury charge did not "commit
> error in failing to require the State to elect between alternative methods of
> committing the same offense." *Butler v. State*, No. 10-13-00430-CR, 2015
> WL 128908 at *12 (Tex. App. – Waco Jan. 8, 2015, pet. ref'd) (citing
> *Huffman v. State*, 267 S.W.3d 902, 909 (Tex. Crim. App. 2008)).

> 78. The Tenth Court of Appeals also states that "the language above
> provided alternative means for committing deadly conduct." *Butler*, No. 10-
> 13-00430-CR, 2015 WL 128908, at *12.

> 79. This Court adopts its findings/conclusions on proving ineffective
> assistance by appellate counsel from Ground Seven, *supra*.[2]

> 80. This Court finds that based on the Tenth Court of Appeals holding
> addressing the sufficiency of evidence argument, Applicant did not prove
> deficient performance nor any prejudice from appellate counsel's alleged

---

[2]It would appear the Court mistakenly referenced Ground Seven and meant to refer to Ground One which
deals with the indictment allegation.

failure to further explain the insufficiency of evidence claim, and Applicant cannot meet either the first or second prong of *Strickland*.

FFCL, pgs. 212. The Tenth Court of Appeals found that the indictment did provide alternative means for deadly conduct. As such, petitioner's argument that appellate counsel failed to cite to relevant authority in support of the insufficiency of the evidence argument is irrelevant. Petitioner has failed to demonstrate deficient performance and prejudice. Petitioner has also failed to show the decision by the Texas Court of Criminal Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

   *B. Trial Court Error (Points of Error No. 20-21, 24, 31-33)*

   1. Petitioner argues "judicial egregious manifest error," alleging the trial court failed to *sua sponte* change venue. Petitioner elaborates, stating the "trial judge failed to change venue after petitioner's prior history was posted in the Eagle newspaper and internet on September 19, 2013 due to the September 17, 2013 mistrial. Petitioner was allowed to be tried again on October 29, 2013 after his prior history was exposed before his final trial began." (Point of Error No. 20 & 21).

   These two claims were addressed separately in petitioner's state application for habeas (Ground Eight and Nine):

> 60. Applicant claims in ground eight that he was denied the right to a fair trial due to trial publicity. (Application, pg. 19). Applicant states that on September 19, 2013, a month before his Deadly Conduct trial, The Eagle published a newspaper article exposing every potential juror to Applicant's criminal history. (Application, pg. 19). As a result, Applicant alleges that he did not receive a fair trial. (Application, pg, 19).

> 61. "Due process requires that a criminal be tried by a jury drawn from a community of people which has not been pervasively exposed to the prosecution's version of the criminal episode which forms the basis of the accusation lodged against the defendant. [It] does not entitle a criminal accused to a panel of jurors who are entirely ignorant of the facts and issues of a given crime." *Hernandez v. State*, 740 S.W.2d 594, 598 (Tex. Crim. App. 1987).

> 62. In his credible affidavit, Mr. Hawthorne states that he does not believe the newspaper article prevented Applicant from receiving a fair trial:

I did not believe the newspaper article constituted pervasive exposure to the applicant's case. Furthermore, during jury selection for the Deadly Conduct trial, I asked prospective jurors if they had heard anything about this case, and I specifically asked the prospective jurors if they had read anything about this case in the newspaper. (7 RR 154). All but one of the prospective jurors shook their head no. (7 RR 154). None of the prospective jurors stated they knew anything about the case. (7 RR 154).

*See* State's Exhibit D: Affidavit of Kyle Hawthorne, pp. 12-13.

63. This Court finds that trial publicity did not prevent Applicant from receiving a fair trial.

64. This Court additionally finds that Applicant's eighth ground is without merit.

\*\*\*

65. In ground nine, Applicant claims that the trial court committed judicial error by not *sua sponte* ordering a change of venue due to trial publicity (Application, pg. 20).

66. This Court finds that it had no reason to order a *sua sponte* change of venue. In doing so, this Court adopts its findings/conclusions to Ground Eight, *supra*.

67. Applicant also claims, in ground nine, that the trial court should have ruled on his *pro se* motion to change venue. (Application, pg. 20).

68. In his credible affidavit, Mr. Hawthorne states that Applicant's *pro se* motion for change of venue was not filed based on trial publicity, but rather based on convenience reasons. *See* State's Exhibit D: Affidavit of Kyle Hawthorne, pg. 13.

69. This Court finds that Applicant's change of venue motion was not based on trial publicity.

70. This Court additionally finds that Applicant's ninth ground is without merit.

The state trial court, on habeas review, found counsel's affidavit credible. Furthermore, neither claim is supported by the record in this case. Regardless, petitioner's claim does not involve consideration of any federal constitutional law. "Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also presented." *Leblanc v. Quarterman*, 2008 WL 2330746, at \*6 (N.D. Tex. 2008); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). Rather, "[f]ederal habeas corpus review is limited to errors of

constitutional dimension . . . ." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). Here, consequently, review of this claim is not proper.

To the extent petitioner claims he was denied a fair trial due to the pre-trial publicity, his claim should be denied as conclusory and speculative. *Ross v. Estelle*, 694 F.2d 1008, 1011 (th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). Petitioner fails to highlight any particular voir dire testimony indicating juror bias resulting from community awareness of the crime. In this respect, he essentially asks the Court to presume bias.

When a petitioner fails to direct the court to specific portions of the record indicating juror bias and instead relies on extensive media coverage, the petitioner must demonstrate that the trial atmosphere was "utterly corrupted by press coverage." *Dobbert v. Florida*, 432 U.S. 282, 303 (1977). The "principle of presumptive prejudice is only rarely applicable and is confined to those instances where the petitioner can demonstrate an extreme situation of inflammatory pretrial publicity that literally saturated the community in which his trial was held." *Busby v. Dretke*, 359 F.3d 708, 725 (5th Cir. 2004) (citing *Mayola v. State of Ala.*, 632 F.2d 992, 997 (5th Cir. 1980)).

Petitioner has failed to show the decision by the Texas Court of Criminal Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

2. Petitioner next argues the trial court unfairly restricted the defense counsel's cross-examination of a key prosecution witness. Petitioner states, "[d]uring the third trial, at a hearing, the State requested the trial court limit the questioning of state witness David Roberson by defense counsel. David Roberson had cooperated with law enforcement in exchange for a dismissal of his

first degree drug felony and misdemeanor charges, had his prior testimony sealed, and was given immunity by the State." (Point of Error No. 24). Petitioner argued this point of error on direct appeal and in his petition for discretionary review. The Tenth Court of Appeals, the last reasoned opinion on the issue, stated the following:

A.    Applicable Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. This procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 403 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

The Sixth Amendment protects the defendant's right not only to confront the witnesses against him, but to cross-examine them as well. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974). "The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316-17. The accused is entitled to great latitude to show a witness's bias or motive to falsify his testimony. *See Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982).

However, the right of cross-examination is not unlimited. The trial court retains wide latitude to impose reasonable limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Id.*; *see Lopez v. State*, 18 S.W.3d 220, 22 (Tex. Crim. App. 2000); *see also Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993). Moreover, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, or to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original); *see Walker v. State*, 300 S.W.3d 836, 844-45 (Tex. App. – Fort Worth 2009, *pet. ref'd*).

B.    Discussion

On direct examination, Roberson testified before the jury that he was a confidential informant for the State and that he had a first-degree felony offense dismissed because of his work. The trial court also allowed Roberson to testify about the transcript from the motion to

suppress, which was sealed from disclosure for the witness's safety. *See Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) ("Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, *the witness' safety*, or interrogation that is repetitive or only marginally relevant" (internal citations & quotations omitted) (emphasis added)). Later, on cross examination, defense counsel also questioned Roberson about his role as a confidential informant. In particular, defense counsel asked the following questions:

| [Defense counsel]: | And then you've had some – is it true you've had cases dismissed because you cooperated with law enforcement to testify against other individuals in those particular cases? |
|---|---|
| [Roberson]: | Yes. |
| Q: | And even in some other cases, that may not have anything to do with those; is that correct? |
| A. | Yeah. |

Besides the speculative nature of defense counsel's questioning about Robertson's service as a confidential informant, appellant has failed to show that eliciting the details of Roberson's work as a confidential informant would show a greater bias than the evidence proffered. In other words, appellant has presented no evidence of a causal connection between the information appellant provided the State in his work as a confidential informant and his testimony in the instant case.

The Court of Criminal Appeals has stated:

> In *Irby*, the defendant wanted to cross-examine [the testifying complainant] about the fact that he was on deferred-adjudication probation for aggravated assault with a deadly weapon. As in *Carpenter*, the defendant argued to the trial judge that the witness's vulnerable status was relevant to show bias and motive. Once again, however, we held that the appellant failed to make a logical connection between [complainant's] testimony . . . and his entirely separate probationary status. Reasoning that a mere showing of a witness' vulnerable status with the State, if evidence only by his probationary status, would not make it any more or less probable that the witness harbored some bias in favor of the State, we

41

concluded that the trial judge did not abuse his discretion in excluding this impeachment evidence because it was irrelevant.

. . . .

The fact that a witness stands accused of (for example) felony theft would not, if presented to the jury, make that witness seem any more prone to testifying favorably for the State than a similarly situated witness who stood accused only of some unspecified felony. Both hypothetical witnesses - the one accused of felony theft and the other accused of the unspecified felony – would stand in the same vulnerable relation to the State; other things being equal, they would be subject to the same risk and extent of punishment. In order words, had the jury been presented with the fact that Joseph's felony charges were actually felony theft charges (and that Stefan's were actually felony robbery charges), it would have had no incrementally greater capacity to evaluate his potential for bias – its perception of the witness's vulnerable relationship with the state would be essentially the same as before. Thus, as in *Carpenter*, Appellant's bill of exception, insofar as it pertains to the nature of the witnesses' charged offenses, does no more than establish the factual basis of the pending [State] charges.

. . . .

But a trial court's discretion does not simply terminate upon a showing that the proffered impeachment evidence and the allegation of bias are logically connected. Indeed, it is a basic tenet of the law of evidence that merely establishing the relevancy of proffered evidence does not necessarily guarantee its admissibility.

*Johnson v. State*, 433 S.W.3d 546, 553-54 (Tex. Crim. App. 2014) (internal citations & quotations omitted).

With regard to the wide latitude afforded trial judges in limiting cross-examination, the *Johnson* Court further explained:

This latitude is exceeded only when the trial court exercises its discretion to so drastically curtail the defendant's cross-examination as to leave him unable to make the record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. This kind of trial-court error is most conspicuous, of course, when the trial court entirely

forecloses the defense from exposing – prohibits all inquiry into – a prototypical form of bias. But it may also be subtler, such as when the only record-making permitted the defense is so circumscribed that a reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination.

*Id*. at 55 (internal citations & quotations omitted).

Here, appellant was allowed to elicit testimony that Roberson had previously worked as a confidential informant. Appellant was not entirely foreclosed from exploring Roberson's potential bias, nor was appellant's defense "so circumscribed that a reasonable jury might have received a significantly different impression of [Roberson's] credibility had [appellant's] counsel been permitted to pursue his proposed line of cross-examination." *Id*. Therefore, based on our review of the record, we cannot say that the trial court erred in limiting appellant's cross-examination of Roberson about the contents of the sealed transcript, especially considering the trial court has wide latitude to limit cross-examination on the basis of a witness' safety. *See Irby*, 327 S.W.3d at 145; *see also Johnson*, 433 S.W.3d at 553-555; *Carpenter v. State*, 979 S.W.2d 633, 635 (Tex. Crim. App. 1998) (en banc) (concluding that the trial court did not err in refusing to allow the defense to cross-examine a witness about pending charges when the defense failed to demonstrate a causal connection between the witness's pending federal charges and his testimony in his state case). Accordingly, we overrule appellant's fourth issue.

*Butler v. State*, pgs. 13-18 (docket entry no. 41-7).

The Tenth Court of Appeals relied on *Davis v. Alaska* in analyzing petitioner's claim that he was unconstitutionally excluded from cross-examining Robinson. 415 U.S. 308 (1974). This case reiterates that exposing a witness's bias is part of the right to cross-examine. *Id.* Specifically, the Supreme Court reversed a ruling that prohibited a defendant from cross-examining a prosecution witness about possible bias based on "the witness' probationary status as juvenile delinquent." *Id*. Thought this case lends support to petitioner's general claim, the state appellate court decision was not contrary to the holding in *Davis*; unlike in *Davis*, petitioner was allowed to cross-examine Robinson about his status as a confidential informant and about the leniency he was shown in light of his cooperation as a confidential informant. The state appellate court decision was not contrary to clearly established Supreme Court law. Nor did it involve an unreasonable application of

Supreme Court law. This claim, therefore, is denied.

3. Petitioner next asserts the trial court erred in denying petitioner's motion to quash the indictment. Petitioner states he was indicted in one indictment for deadly conduct and unlawful possession of a firearm by a felon, enhanced where the state alleged in count one, two separate manner and means of committing the offense of deadly conduct with the same deadly weapon. On September 13, 2013, the trial court denied petitioner's motion to quash. At the third trial, petitioner states defense counsel re-urged the motion and the court denied the motion again based on the same reasoning. (Point of Error No. 31).

Petitioner argued this claim on direct appeal and in his petition for discretionary review. See *Butler v. State*, pg. 2- (docket entry no. 41-7). For the reasons outlined in section 2(d) *supra*, petitioner's claim lacks merit. "The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985); *see also McKay v. Collins*, 12 F.3d 66, 68-69 (5th Cir. 1994). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). The state court rejected this claim, thereby necessarily finding that the indictment was sufficient. Federal habeas review of that determination is precluded. *See Alexander*, 775 F.2d at 598. Moreover, petitioner has not shown that the state court's rejection of this claim was unreasonable. This claim is denied.

4. Petitioner argues the trial court erred in denying petitioner's motion for mistrial. (Point of Error No. 32). Petitioner present this point of error on direct appeal and in his petition for discretionary review. For the reasons outlined in section 3(a) *supra*, petitioner's claim lacks merit. The appellate court, as the last reasoned opinion, determined that there was no error as the

instructions to the jury to disregard were sufficient to cure any error.

"Federal habeas relief cannot be had absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (internal quotations and citation omitted). Given that the appellate court found that any potential error was cured by the instruction to disregard, petitioner has not shown that the trial court's denial of his motions for mistrial were errors "'so extreme that it constitutes a denial of fundamental fairness'" under the Due Process Clause. *See Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). Petitioner has failed to demonstrate the decision by the Tenth Court of Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

5. Petitioner argues the trial court erred in admitting evidence of serious bodily injury and car chase. (Point of Error No. 33). Petitioner argued this claim on direct appeal and in his petition for discretionary review. The Tenth Court of Appeals in addressing this claim stated the following:

B.     Facts

At trial, the State proffered testimony about the injuries Pinkie sustained and appellant's subsequent flight from authorities. Specifically, witnesses testified that appellant, Pinkie, and Roberson were involved in an argument and that appellant shot Pinkie through a door when he left Pinkie's trailer house. The evidence established that the bullet went through Pinkie's body, causing extensive injuries, and ultimately landed on the couch in the residence. After the incidence, appellant fled the scene and engaged in a high-speed chase through multiple counties before finally being stopped by law enforcement in Waller County.

C.     Evidence of Pinkie's Injuries

For several reasons, we cannot say that the trial court abused its discretion in admitting evidence of Pinkie's injuries. First, we emphasize that the State alleged in the indictment that appellant used a firearm that, in the manner of its use or intended use, was capable of causing death or serious bodily injury. Therefore, one of the

elements that the State had to prove was whether the victim, Pinkie, was in imminent danger of serious bodily injury when appellant purportedly shot through the door. Section 1.07(a)(46) defines "[s]erious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46) (West Supp. 2014). The State proffered ballistics and crime-scene evidence demonstrating that Pinkie suffered serious bodily injuries – from which she almost died – during the commission of the offense. Because the complained-of evidence addressed an element of the charged offense, we conclude that the evidence was relevant. *See* TEX. R. EVID. 401; *see also Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) ("The proffered evidence is relevant if it has been shown to be material to a fact in issue and if it makes that fact more probable than it would be without the evidence.").

Additionally, appellant argues that the probative value of the evidence of Pinkie's injuries was outweighed by the prejudicial effect. In particular, appellant complains that the State presented pictures of Pinkie's injuries and scars, her nightgown, the bloody interior of the car occupied by Pinkie, and bloody crime-scene pictures. Although the evidence depicts gruesome and bloody details, they are no more gruesome or bloody than the facts of the case. *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2004) (stating that complained-of photographs only showed the victim's injuries and were no more gruesome than expected); *see also Sosa v. State*, 230 S.W.3d 192, 196 (Tex. App. – Houston [14th Dist.] 2005, pet. ref'd) (concluding that the prejudice caused by photographs did not substantially outweigh their probative value and noting that the photographs were no more gruesome than the facts of the offense). Furthermore, the complained-of evidence provided a necessary visual component to, and understanding of, witnesses' testimony regarding what they observed regarding the nature and extent of the victim's serious bodily injuries. We therefore conclude that the probative value of the evidence depicting Pinkie's injuries was not substantially outweighed by the alleged prejudice caused. *See* TEX. R. EVID. 403; *see also Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006); *Montgomery*, 810 S.W.2d at 389 (noting that, when a trial court balances the probative value of the evidence against its danger of unfair prejudice, a presumption exists that the evidence will be more probative than prejudicial).

D.    Evidence of the Car Chase

Next, appellate complains that the trial court erred in admitting evidence that he fled the scene of the crime and participated in a car chase in Waller County, Texas. We disagree.

"Evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn." *Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (citations omitted); *see*

> *Wachholtz v. State*, 296 S.W.3d 855, 859 (Tex. App. – Amarillo 2009, pet. ref'd) (stating that an effort to escape evinces a consciousness of guilt, which, in turn, is evidence of culpability). "To support the admission of evidence of escape from custody or flight it must appear that the escape or flight have some legal relevance to the offense under prosecution." *Bigby*, 892 S.W.2d at 883 (citations omitted).
>
> Here, the evidence revealed that immediately after shooting and seriously injuring Pinkie, appellant fled from the scene in Brazos County. Appellant's flight continued with a high-speed car chase in Waller County shortly thereafter. Consequently, we conclude that the evidence demonstrated a relationship between the offense and appellant's flight; and as such, we hold that the evidence was admissible to show appellant's consciousness of guilt. *See Bigby*, 892 S.W.3d at 883; *see also Wachholtz*, 296 S.W.3d at 859; *Burks v. State*, 227 S.W.3d 138, 148 (Tex. App. – Houston [1st Dist.] 2006, pet. ref'd) ("Taking into consideration appellant's concession that he was aware of the police officer's motive to arrest him, we hold that evidence of appellant's flight on seeing the officer wearing the jacket marked 'POLICE' was relevant and admissible to show, without violating rule 404(b), that appellant was conscious of his guilt."). Therefore, based on the foregoing, we overrule appellant's fifth issue.

*Butler v. State*, pgs. 18-22 (docket entry no. 41-7).

Federal courts do not "grant habeas relief for errors in a trial court's evidentiary rulings unless those errors resulted in a denial of fundamental fairness under the Due Process Clause." *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1988) (internal citations and quotation marks omitted). "The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Id.*

Petitioner contends the testimony was overly prejudicial. However, petitioner has not shown that the testimony played a crucial, highly significant role in his conviction. As discussed *infra* in the claim relating to the sufficiency of the evidence, the state presented overwhelming evidence of petitioner's guilt. Because of the overwhelming evidence of petitioner's guilt, petitioner has failed to establish the admission of the evidence relating to Pinkie's injuries or the car chase played a crucial, highly significant role in his conviction. Petitioner has failed to show the decision by the Tenth Court of Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an

unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).  This claim is denied.

### C. Other Error (Point of Error No. 19, 22 & 23)

1.  Petitioner argues he was subjected to double jeopardy and his conviction is void. Petitioner states he was tried on June 5-6, 2012 and that the state requested and received a mistrial after the trial court granted petitioner's motion to suppress.  Following reversal on appeal, the State elected to retry the case on September 17-18, 2013 and another mistrial was declared when the state elicited testimony from the complainant concerning petitioner being on parole at the time of the alleged offense.  (Point of Error No. 19).  The state trial court on habeas review stated the following:

> 51.  Double jeopardy does not bar a retrial when a mistrial is granted at the defendant's request unless the defendant is able to show that the prosecution engaged in conduct that was intended to provoke the defendant into moving for mistrial.  *Ex parte Ahn*, No. 08-14-00082-CR, 2015 WL 4940053, at *1 (Tex. App. – El Paso, Aug. 19, 2015) (citing *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982)).

> 52.  The prosecutor's misconduct in provoking a mistrial must be deliberate or reckless to show that the mistrial resulted from prosecutorial misconduct. *See Ex parte Mallonee*, No. 05-03-00072-CR, 2003 WL 1735241, at *4 (Tex. App. – Dallas, April, 2, 2003).

> 53.  In a post-conviction habeas corpus application, the evidence is viewed in the "light most favorable to the trial court's ruling."  *Ex parte Ahn*, No. 08-14-0082-CR, 2015 WL 4940053, at *2 (*Ex parte Masonheimer*, 220 S.W.3d 494, 607 (Tex. Crim. App. 2007)).

> 54.  This Court finds that the record shows that, rather than deliberate provocation, the State was surprised by the statements made by the witness, Pinkie Hardy.  (7 RR 19-20).

> 55.  This Court also finds that there is no evidence (and Applicant cites to no evidence in the record) demonstrating that the State deliberately or reckless provoked Applicant into moving for a mistrial, and thus, Applicant's sixth ground is without merit.

FFCL, pg. 207.

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, [], does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.  A defendant's motion for a mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.'  *United States*

48

> *v. Scott*, 437 U.S. 82, 93 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, '[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.' *United States v. Dinitz*, 424 U.S. 600, 609 (1976). Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion

*Oregon v. Kennedy*, 456 U.S. 667, 676 (1982). "'Goading' is narrowly defined, and '[g]ross negligence by the prosecutor, or even intentional conduct that seriously prejudices the defense, is insufficient.'" *United States v. Buck*, 847 F.3d 267, 272 (5th Cir. 2017) (citing *United States v. El-Mezain*, 664 F.3d 467, 561 (5th Cir. 2011). "Instead, there must be 'intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.'" *Id.* (citing El-Mezain, 664 F.3d at 561 (quoting *United States v. Wharton*, 320 F.3d 526, 531-32 (5th Cir. 2003)).

The record establishes the prosecution was surprised by Pinkie Hardy's testimony. *See* Court Reporter's Record, Vol. 7 of 15, pgs. 19-20 (docket entry no. 41-19). "The 'objective facts and circumstances' in this case do not suggest that the prosecutor[] engaged in 'conduct . . . intended to provoke the defendant into moving for a mistrial.'" *Buck*, 847 F.3d at 273 (citing *Kennedy*, 456 U.S. at 679). Petitioner has failed to show the decision by the Tenth Court of Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

2. Petitioner's next point of error states "challenge to deadly weapon finding/double jeopardy/collateral estoppel/illegally obtained evidence." Petitioner states he entered a plea agreement in Waller County which consisted of evading arrest/possession of a controlled substance and felon in possession of a firearm which was dismissed as part of the plea agreement. Petitioner states the evidence was obtained after petitioner left the crime scene during an inventory search. (Point of Error No. 22). The state trial court on habeas review stated the following with respect to this point of error:

81. Applicant, in ground twelve, claims that [the] inventory search performed after his arrest was illegally conducted, and therefore, any evidence obtained from the inventory search was also illegal because Lieutenant Lane from Waller County "admitted that they had no policy for inventory searches." (Supplemental Application, pg. 3).

82. An applicant cannot for the first time raise Fourth Amendment issues in an article 11.07 habeas corpus writ. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) (citing *Ex parte Kirby*, 492 S.W.2d 579, 581 (Tex. Crim. App. 1973). Consequently, an article 11.07 writ of habeas corpus should not be used as a substitute for appeal. *Ex parte Gaither*, 387 S.W.3d 643, 648 (Tex. Crim. App. 2012).

83. This Court finds that since Applicant failed to argue his Fourth Amendment issue during the direct appeal process, he cannot now raise the issue in article 11.07 writ.

FFCL, pgs. 212-13.

A petitioner must not only raise a claim in state court, he must do so in a manner that fully allows for state consideration of its merits. "When a state court declines to hear a prisoner's federal claims because the prisoner failed to fulfill a state procedural requirement, federal habeas is generally barred if the state procedural rule is independent and adequate to support the judgment." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). The state court trial court, on habeas review, found that petitioner did not present this claim consistent with state procedural law. This finding likewise forecloses federal review.

The unexhausted nature of this claim results in a federal procedural bar. *See Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999). "A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (quoting *Coleman v. Thompson*, 501 U.S. 722, 734 n. 1 (1991)); *see also Edwards v. Carpenter*, 529 U.S. 446, 454-55 (2000) ("[T]he judge may not issue the writ if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim.") (Breyer J. concurring); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (holding that when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and

50

hold the claim procedurally barred from habeas review").

The state trial court, on habeas review, however, also reviewed this claim on the merits in the alternative:

84. "To satisfy the inventory search exception, the inventory must be conducted in good faith and pursuant to a reasonable standardized police procedure." *Perkins v. State*, No. 09-16-0003-CR, 2017 WL 129924, at *4 (Tex. App. – Beaumont, Jan. 11, 2017) (citing *Moskey v. State*, 333 S.W.3d 696, 700 (Tex. App. – Houston [1st Dist.] 2010) (other citations omitted).

85. "The general legality of an inventory search is not contingent upon whether the inventory policy is written." *Perkins*, No. 09-16-00003-CR, 2017 WL 129224, at *4 (citing *State v. Molder*, 337 S.W.3d 403, 410 n. 4 (Tex. App. – Fort Worth 2011) (citations omitted).

86. "A police officer's inventory of the contents of an automobile is permissible under the Fourth Amendment if conducted pursuant to a lawful impoundment of the vehicle." *Moskey v. State*, 333 S.W.3d 696, 700 (Tex. App. – Houston [1st Dist.] 2010) (citing *South Dakota v. Opperman*, 428 U.S. 364, 375-76 (1976) (other citations omitted)).

87. Lieutenant Lane testified that standard procedure existed for inventory searches on non-consent tows and that he followed standard procedure in conducting an inventory search of Applicant's vehicle. (8 RR 82).

88. Mr. Hawthorne acknowledged that written policy existed for conducting searches on all non-consent tows in the Waller County Policies and Procedures Manual (Defense Exhibit #1). (8 RR 81-82).

89. This Court finds that Lieutenant Lane of Waller County Police Department conducted a legal search under the inventory exception for warrantless searches, and thus any evidence obtained for the search was not illegally obtained.

90. Under both state and federal law, a police officer may conduct a warrantless search of an automobile, if he or she has probable cause to believe a crime has been committed and there is contraband located somewhere inside the vehicle." *Fineron v. State*, 201 S.W.3d 361, 367 (Tex. App. – El Paso 2006, no pet.) (citing *Carroll v. United States*, 267 U.S. 132, 158-59) (other citations omitted).

91. The automobile exception does not require the existence of exigent circumstances in addition to probable cause. *Fineron*, 201 S.W.3d at 367. In determining probable cause, courts must consider the totality of the circumstances. *Fineron*, 201 S.W.3d at 367 (citing *Hollis v. State*, 971 S.W.3d 653, 655 (Tex. App. – Dallas 1998, pet. ref'd)).

92. This Court finds Lieutenant Lane had been notified that Applicant had been involved in a shooting, believed that Applicant was armed, and engaged the Waller County officers in a high speed chase. (8 RR 91).

93. This Court finds that considering the totality of the circumstances, Lieutenant Lane had probable cause to search Applicant's vehicle, and the search was valid under the Fourth Amendment.

FFCL, pgs. 213-15.

"The underlying rationale for allowing an inventory exception to the Fourth Amendment warrant rule is that police officers are not vested with discretion to determine the scope of the inventory search." *Colorado v. Bertine*, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring) (citing *South Dakota v. Opperman*, 428 U.S. 364, 382-83 (1976) (Powell, J., concurring)). "This absence of discretion ensures that inventory searches will not be used as a purposeful and general means of discovering evidence of a crime." *Id.* Here, the record establishes the inventory search was conducted pursuant to a written policy and the officer also had sufficient probable cause to search the vehicle. Petitioner has failed to show the decision by the Tenth Court of Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

3. Petitioner's final point of errors states "brady violation/violation of due process/insufficient evidence/illegally obtained evidence." Petitioner states trial counsel was not provided a copy of the inventory sheet which was supposed to have a firearm on the inventory sheet and that the inventory sheet wasn't provided until trial began and the evidence was withheld. (Point of Error No. 23). The state trial court, on habeas review, stated the following:

102. Applicant claims in ground fourteen that "[a] BRADY violation exists because [Mr. Hawthorne] wasn't provided a copy of the inventory sheet to verify if a firearm or any items charges against Applicant was on the inventory or whatever was in the car that may have been inventoried." (Supplemental Application, pg. 5).

103. In determining if a *Brady* claim exists, applicable law states:

[A] prosecutor has an affirmative duty to turn over material, favorable evidence to the defense . . . . *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The test used to determine whether a prosecutor's actions have violated the due process rights of the accused in such a situation is whether the prosecutor (1) failed to disclose evidence (2) favorable to the accused and

> (3) the evidence is material, meaning that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Ex parte Kimes*, 872 S.W.2d 700, 702-03 (Tex. Crim. App. 1993). When, however, the evidence is provided to the defendant in time for it to be used in the defense, the defendant's *Brady* claim would fail. *Juarez v. State*, 439 S.W.2d 346, 348 (Tex. Crim. App. 1969).
>
> *Garcia v. State,* No. 04-03-00404-CR, 2004 WL 2871750, at * 16 (Tex. App. – San Antonio, 2004, pet. ref'd).
>
> 104. This Court finds that as soon as the State received possession of the inventory sheet during trial, they turned it over to Mr. Hawthorne (8 RR 109-110).
>
> 105. This Court finds that it was determined that the inventory sheet did not have a gun listed on it because the gun was tagged as evidence. (8 RR 112). However, Mr. Hawthorne was given the opportunity to use the inventory sheet during trial in his defense. (8 RR 113).
>
> 106. Ultimately, this Court finds that no *Brady* violation occurred, and Applicant's fourteenth ground is without merit.

FFCL, pgs. 217-18. The record establishes there was no failure to disclose the evidence and petitioner was allowed to use the evidence in his defense during trial. The trial court, on habeas review, recited and applied the elements of a *Brady* violation. Petitioner has failed to show the decision by the Tenth Court of Appeals in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim is denied.

### D. Legal Insufficiency

Petitioner alleges his conviction was "based on less than proof beyond a reasonable doubt of each and every element of the charged crime." Second Amended Petition, pg. 4 (docket entry no. 14). Specifically, petitioner states "the indictment alleged the petitioner discharged a firearm in the direction of individuals, namely Pinkie Hardy and David Roberson. However, the jury was instructed different but all elements of the indictment still were not proven." *Id.* Petitioner goes on to argue,

Petitioner's conviction and sentence for Deadly conduct does not include an offense where there is bodily injury to another person. Here, Pinkie Hardy testified she and her other boyfriend, David Roberson, were standing behind the trailer's closed door when she was shot, she had told petitioner to leave, he then left and fire [sic] a gun at the trailer's closed door. 8RR at 130-136. Also, Roberson testified he called Pinky earlier, he came over to Pinky's trailer, saw Petitioner with a gun, after Petitioner left, the door was closed, and he heard the gunshot come through th [sic] door, and realized Pinky was injured by the gunshot. 9RR at 26-40.

Here the State had indicted Petitioner on Aggravated Assault prior to this indictment, but has neglected to try Petitioner under that indictment, and chose to proceed to trial on the Deadly Conduct indictment. Assault causing bodily injury to Pinky Hardy was never alleged as an element in this indictment. The jury charge alleged deadly [sic] conduct under section (b1) or (b2), and no injuries to Pinky Hardy. 3CR at 440; Previous to trial, Petitioner objected to the allegations of aggravated assault as this was a deadly conduct case. 8RR at 19-21.

The State never amended the indictment, even after a hearing on a motion to quash, three trials, two of which resulted in mistrials, and a request by the Petitioner for the State's election between the manner and means. The State themselves kept referring to this case as an "almost attempt murder or almost capital murder" case, that their case was extremely strong as Appellant admitted to the grand jury that he accidently shot Pinky, the State were going to proceed to trial on the unlawful possession of a firearm and were putting the deadly conduct with it because under aggravated assault with a deadly weapon case law they could do that, Petitioner's grand jury admissions was material to their case, and again at the sentencing on deadly conduct, the State's in closing arguments told the jury it was like a "murder case", with defense objection granted, and a court instruction to disregard. 4RR at 6, 21; 23 10RR at 38-39. It shoulb [sic] be noted the State never used Petitioner's grand jury admissions at his jury trials. Insufficient Jury Charge/Election

Prior to closing arguments, Petitioner objected to the jury charge as insufficient as to deadly conduct, in particular, requested the State elect between the two manner and means in the jury charge, which stacked the indictment. 9RR at 99-106. The trial court overruled the objections. 9RR at 107. The using of the petitioner's "knowledge" that the trailer was occupied, and not the manner by which petitioner was reckless as required by statute. The petitioner did not testify the State did not admit and use petitioner's grand jury's [sic] confession testimony, for which the State delayed the trial of the case, appealing to have permission to use, and claiming it was material to their case.

Third Amended Petition, Claim 21 (docket entry no. 71).

A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Foy v. Donnelly*, 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts, nevertheless, have extremely

limited habeas review of claims based on the sufficiency of the evidence. When reviewing such claims, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When faced with a record of historical facts that supports conflicting inferences, federal courts must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. *Id.* at 326. Where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).

In the present case, petitioner argued legal insufficiency on direct appeal and in his petition for discretionary review. The Texas Court of Criminal Appeals refused the petition for discretionary review without a written order. *See Butler v. State*, No. PD-0129-15 (pet. ref's Apr. 1, 2015). Thus, this Court "should 'look through' the unexplained decision to the last related state-court decision providing particular reasons, both legal and factual, 'presume that the unexplained decision adopted the same reasoning,'" and give appropriate deference to that decision. *Wilson v. Sellers*, 138 S.Ct. 1188, 1191-92 (2018). Applying the *Jackson* standard, and relevant state law, the state appellate court addressed petitioner's claim as follows:

> The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*
>
> B. Discussion
>
> Under section 22.05(b) of the Penal Code, a person commits the offense of deadly conduct by discharge of a firearm "if he knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." TEX. PENAL CODE ANN. § 22.05(b). Contrary to appellant's assertion, section 22.05(b) does not require the State to prove that the victims were not injured as an element of the offense. *See*

*id*. In fact, most of the cases relied upon by appellant involve a prior iteration of section 22.05, which did not address the offense of deadly conduct by discharging a firearm. *See generally Bell v. State*, 693 S.W.2d 434 (Tex. Crim. App. 1985); *Gallegos v. State*, 548 S.W.2d 50 (Tex. Crim. App. 1977); *Scott v. State*, 861 S.W.2d 440 (Tex. App. – Austin 1993, no pet.). In *Benjamin v. State*, the charged offense involved section 22.05(a), which provides that a person commits the offense of deadly conduct if he recklessly engages in conduct that places another in imminent danger of serious bodily injury. *See* 69 S.W.3d 705, 707-08 (Tex. App. – Waco 2002, no pet.); *see also* TEX. PENAL CODE ANN. § 22.05(a). Furthermore, in *Benjamin*, this Court stated that section 22.05(a) applies to those acts that fall short of injuring another. 69 S.W.3d at 708. Nothing in the *Benjamin* opinion states that the same is true for section 22.05(b). *See id.* As such, we are not persuaded by appellant's contention that the evidence is insufficient to support his conviction "because the felony offense of deadly conduct does not include an offense where there is bodily injury to another person."

Appellant also argues that the evidence supporting his conviction is Insufficient because the trial court did not require the State to elect between alternative manner and means of committing deadly conduct. In particular, appellant contends that the failure to elect resulted in a misjoinder of offenses that rendered the evidence insufficient. However, appellant does not cite any relevant authority explaining how the purported misjoinder of offenses rendered the evidence insufficient. *See* TEX. R. APP. P. 38.1(I).

In any event, based on our reading of the jury charge, we cannot say that the trial court erred in failing to require the State to elect between alternative methods of committing the same offense. The jury charged provided as follows, in relevant part:

> Now, if you find from the evidence beyond a reasonable doubt that on or about May 28, 2011 in Brazos County, Texas, the defendant, QUINCY BULTER [sic], did then and there knowingly discharge a firearm at or in the direction of one or more individuals; namely: Pinkie Hardy or David Roberson, or that the defendant did then and there knowingly discharge a firearm at or in the direction of a habitation, and the defendant was then and there reckless as to whether the habitation was occupied; to wit: by discharging said firearm at a habitation knowing that Pinkie Hardy or David Roberson were inside of said habitation, then you will find the defendant guilty of the offense of Deadly Conduct as charged in the indictment.

(Emphases added). As provided in section 22.05(b), the language above provided alternative means for committing deadly conduct. The Court of Criminal Appeals has held that the trial court does not commit error by failing to require the State to elect between alternative methods of committing the same offense. *See Huffman v. State*, 267 S.W.3d 902, 909 (Tex. Crim. App. 2008); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Furthermore, the *Kitchens* Court stated that: And although the indictment may allege the differing methods of committing the offense in the

conjunctive, it is proper for the jury to be charged in the disjunctive." 823 S.W.2d at 258. Such is the case here. Therefore, based on the foregoing, we conclude that this contention lacks merit.

And finally, appellant asserts that "[t]he trailer door was closed, so the State's proof of at or in the direction of individuals with Appellant knowing that Pinki[ie] Hardy or David Roberson were inside the habitation is insufficient." We disagree that the fact that the trailer door was closed somehow renders the evidence insufficient.

Donita Williams, Pinkie's cousin, testified that she was present at Pinkie's trailer house on the night in question. Williams observed a white Chevrolet Malibu, which was later identified as appellant's car, parked nearby. Williams testified that the door to the trailer was closed when she heard a gunshot. Williams then heard Pinkie screaming, "My baby, my baby," and saw the shooter get in the Malibu "and just casually drove off like nothing happened."

Pinkie noted that she and Roberson got into an argument at her trailer house the night of the shooting. Appellant was also present at the trailer house. Initially, Pinkie told Roberson to leave, but he refused to do so. Thereafter, appellant came out of a bedroom holding a gun and began arguing with Roberson. At this point, Pinkie asked appellant to leave. Appellant complied, and Pinkie shut the door to the trailer house. Through the peep hole in the door, Pinkie watched appellant make his way towards the white Malibu. Pinkie and Roberson continued their argument until Pinkie heard a gunshot. Pinkie testified that she immediately felt a burning pain and exclaimed, "He shot me in my –ssy."

Roberson testified that, on the night in question, he saw a white vehicle parked near Pinkie's trailer house. Roberson also noted that he and Pinkie were arguing on the night in question and that appellant eventually got involved in the argument. While appellant and Roberson yelled insults at one another, Roberson saw a black semi-automatic handgun in appellant's hand. Appellant held the gun at his side. Roberson recalled that Pinkie asked appellant to leave the trailer house and that appellant did so. Once appellant left the trailer house, Roberson closed and locked the door. Then, Roberson and Pinkie resumed their argument; however, shortly thereafter, Roberson heard a gunshot and saw Pinkie fall to her knees with blood "shooting out" from her leg. Roberson picked up Pinkie, kicked open the door, and searched for a vehicle to transport Pinkie to the hospital. When Roberson opened the door, he saw appellant. Roberson told appellant, "put her in the motherf------ car. You shot her." Appellant stood beside the white Malibu with his hands on the top of the car and with the gun in one hand. Roberson then ran next door. At that time, Roberson recalled hearing tires squeal and seeing appellant drive away.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have determined that: (1) the door to the trailer house was closed at the time appellant fired the gun; (2) appellant, who had been involved in an argument at the trailer house, knowingly discharged a firearm at or in the direction of Pinkie and Roberson; and (3) appellant was

> reckless as to whether the habitation was occupied when he fired the shot. *See* TEX. PENAL CODE ANN. § 22.05(b); *see also Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Johnson v. State*, 364 S.W.3d 292, 293-94 (Tex. Crim. App. 2012). Accordingly, we hold that the record contains sufficient evidence to support appellant's conviction for engaging in deadly conduct by discharging a firearm. *See* TEX. PENAL CODE ANN. § 22.05(b); *see also Jackson*, 443 U.S at 319, 99 S.Ct. at 2789; *Johnson*, 364 S.W.3d at 293-94. We overrule appellant's second issue.

*See Butler v. State*, No. 10-13-00430-CR, pgs. 1-28 (docket entry no. 41-7).

There is no evidence in the record indicating petitioner did not know Pinkie and/or Roberson were still in the trailer. Petitioner's actions reflected his knowledge that they were still in the trailer. Based on the foregoing, the record supports the jury's conclusion that there was sufficient evidence from which to conclude that petitioner engaged in deadly conduct by discharging a firearm. The evidence was sufficient to prove his guilt.

A federal court, on federal habeas review, "may not substitute its own judgment regarding the credibility of witnesses for that of the state courts." *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985). This court must give due deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. The evidence presented at petitioner's trial was more than sufficient to support his conviction. The state court's determination was not an unreasonable application of clearly established federal law, as determined by the Supreme Court, and this claim should be denied as lacking in merit.

## ORDER

It is **ORDERED** that this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is **DISMISSED.**

Furthermore, after a review of the record in this case, the Court is of the opinion petitioner is not entitled to a certificate of appealability. An appeal from a judgment denying post-conviction collateral relief may not proceed unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253. The standard for a certificate of appealability requires the petitioner to make a substantial

showing of the denial of a federal constitutional right.  *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004).  To make a substantial showing, the petitioner need not establish that he would prevail on the merits.  Rather, he must demonstrate that the issues are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84.  Any doubt regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination.  *See Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000).

In this case, petitioner has not shown that any of the issues would be subject to debate among jurists of reason.  The questions presented are not worthy of encouragement to proceed further. Therefore, petitioner has failed to make a sufficient showing to merit the issuance of certificate of appealability.  Accordingly, a certificate of appealability will not be issued. A Final Judgment will be entered separately.

A Final Judgment will be entered separately.

So **ORDERED** and **SIGNED  March 20, 2020.**

_____
 Ron Clark, Senior District Judge